11-4933 (L)
United States v. Stith & Brantley

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: March 6, 2013          Decided: May 30, 2013)

Docket Nos. 11-4933-cr(L) & 11-4935-cr(con)

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

EDWIN MONTANEZ, AKA SHA, AKA SHA DIC, AKA SHADIGGA, AKA SHY, KEN KINSEY, JR., AKA
BENJI, AKA JADE, KARRIEM WILLIAMS, AKA CALO, LARRY BENTON, AKA WEEZY, AKA LIL
WAYNE, AKA SQUEEZY, QUANTAE WRIGHT, AKA LITTLE NOVA, ANDRE ROBINSON, AKA DRE
DRE, AKA TEAM, MARC L. STANLEY, AKA IMF, ROBERT MURRAY, AKA KILLA, AKA KILLER,
PATRICK BRUMFIELD, AKA P-DOG, MATTHEW BRUMFIELD, AKA AUGUSTUS, AKA STALLION,
BOBBY EVERSON, AKA PINO, AKA STYLES, JEFFREY JOHNSON, AKA BLING,

*Defendants*,

CLIFTON STITH, AKA TONY, AKA YAYO, ADIB BRANTLEY, AKA SHA BLOOD,

*Defendants-Appellants*.

_____

Before: KATZMANN, PARKER, *Circuit Judges*, and KUNTZ, *District Judge*.[*]

Appeal from two orders entered on November 16, 2011 by the United States District

Court for the Northern District of New York (Mordue, *J.*), which reduced the Defendants-

_____

[*]The Honorable William F. Kuntz, II, of the United States District Court for the Eastern District
of New York, sitting by designation.

Appellants' terms of imprisonment under 18 U.S.C. § 3582(c)(2), but declined to depart or vary in any respect from the Defendants-Appellants' amended guideline ranges. We hold that U.S.S.G. § 1B1.10(b)(2)(A) prohibited the district court from departing or varying from the Defendants-Appellants' amended guideline ranges, and that the scope of this prohibition included departures under U.S.S.G. § 4A1.3. **AFFIRMED**.

_____

| | |
|---|---|
| Counsel for Appellee: | PAUL D. SILVER (John M. Katko, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, NY |
| Counsel for Defendants-Appellants: | JAMES P. EGAN (Lisa A. Peebles, *on the brief*), Federal Public Defender's Office, Syracuse, NY. |

_____

PER CURIAM:

This case presents two issues: (1) whether U.S.S.G. § 1B1.10(b)(2)(A) constitutes a valid exercise of the United States Sentencing Commission's authority, and thus binds district courts whenever they reduce a defendant's sentence under 18 U.S.C. § 3582(c)(2); and (2) whether, even if § 1B1.10(b)(2)(A) binds district courts, it nonetheless permits them to depart from a defendant's amended guideline range under U.S.S.G. § 4A1.3. Defendants-Appellants Adib Brantley and Clifton Stith appeal from two orders entered on November 16, 2011 by the United States District Court for the Northern District of New York (Mordue, *J.*). In those orders, the district court reduced Brantley's and Stith's terms of imprisonment under 18 U.S.C. § 3582(c)(2). Nonetheless, the district court concluded that U.S.S.G. § 1B1.10(b)(2)(A) prohibited it from reducing Brantley's and Stith's sentences "to a term [of imprisonment] that is

less than the minimum of the[ir] amended guideline range[s]." Based on this conclusion, the district court declined to grant Brantley's and Stith's request for a departure under U.S.S.G. § 4A1.3, even though it had previously departed under that provision at the Defendants-Appellants' initial sentencings.

On appeal, Brantley and Stith argue that the district court erred in concluding that § 1B1.10(b)(2)(A) prohibited it from further reducing their sentences. First, they contend that § 1B1.10(b)(2)(A) does not bind district courts because the United States Sentencing Commission ("the Commission") exceeded its authority when it enacted that provision. Second, they argue that, even if § 1B1.10(b)(2)(A) binds district courts, it does not prohibit them from departing under U.S.S.G. § 4A1.3 in order to account for the fact that a defendant's "criminal history category substantially over-represents the seriousness" of his past crimes. For the reasons set forth below, we affirm the district court's judgments.

## I.      Background

On June 4, 2007, Brantley pled guilty to one count of conspiracy to engage in a pattern of racketeering in violation of 18 U.S.C. § 1962(d). At his initial sentencing on December 6, 2007, Brantley's guideline range recommended a sentence of 151 to 188 months of imprisonment. Because the district court found that Brantley's criminal history category overstated the seriousness of his past crimes, it granted a downward departure under U.S.S.G. § 4A1.3(b), reducing his range to 121 to 151 months. Considering this range, the district court imposed a sentence of 135 months.

Stith's case has a similar history. On May 16, 2007, he pled guilty to one count of conspiracy to engage in a pattern of racketeering in violation of 18 U.S.C. § 1962(d). At his

initial sentencing on December 10, 2007, Stith's guideline range was 140 to 175 months of imprisonment. The district court departed from Stith's guideline range under U.S.S.G. § 4A1.3(b), reducing that range to 121 to 151 months. Considering this range, the district court imposed a sentence of 121 months.

In 2010, Congress passed the Fair Sentencing Act ("FSA"), which sought to "restore fairness to Federal cocaine sentencing" by increasing the amounts of crack cocaine a defendant needed to distribute in order to trigger statutory sentencing minimums. Pub. L. No 111-220, §§ 1-2, 124 Stat. 2372, 2372 (2010). The FSA also authorized the Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guidelines provisions and applicable law." *Id.* § 8, 124 Stat. at 2374. Acting under this authority, the Commission amended the United States Sentencing Guidelines ("the guidelines") to conform them to the new statutory scheme and to increase the amounts of crack cocaine a defendant needed to distribute in order to incur harsher penalties. U.S.S.G. app. C, amends. 748 & 750 (2011). Effective November 1, 2011, the Commission made the crack-cocaine amendments retroactive, applying them to defendants, such as Brantley and Stith, who had been sentenced before the amendments' enactment. U.S.S.G. app. C, amend. 759 (2011).

When it made the crack-cocaine amendments retroactive, the Commission also amended the guideline provision that governs the extent to which a district court may reduce a defendant's term of imprisonment in response to guideline amendments. *Id.* Under U.S.S.G. § 1B1.10(b)(2)(A), a district court may not "reduce [a] defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." In 2010, the sentencing

guidelines recognized an exception to § 1B1.10(b)(2)(A) wherever "the original term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing." U.S.S.G. § 1B1.10(b)(2)(B) (2010).[1] In cases to which the exception applied—*i.e.*, where the district court had previously departed from a defendant's guideline range—§ 1B1.10(b)(2)(B) permitted the district court to grant "a reduction comparably less than the amended guideline range." *Id.* The 2011 amendment narrowed the scope of § 1B1.10(b)(2)(B)'s exception, applying it only where a defendant had initially received a below-guideline sentence because she had provided "substantial assistance to authorities." U.S.S.G. § 1B1.10(b)(2)(B) (2011); *see also* U.S.S.G. app. C, amend. 759 (2011).

In 2011, Brantley and Stith asked the district court to reduce their terms of imprisonment based on the retroactive amendments to the guidelines. The district court found that, under those amendments, Brantley had an amended guideline range of 110 to 137 months, and Stith had an amended guideline range of 100 to 125 months. On November 16, 2011, the district court reduced Brantley's sentence to 110 months, and Stith's sentence to 100 months. Responding to Brantley's and Stith's requests for a downward departure under U.S.S.G. § 4A1.3, however, the district court stated that:

> Under the new amendment to § 1B1.10 (eff. Nov. 1, 2011), defendants do not benefit from any previously-given downward departures except those given for substantial assistance. . . . Thus, this order modifying defendant's sentence . . . does not reflect the previous departure from defendant's criminal history category under U.S.S.G. § 4A1.3(b).

Brantley's App'x at 95; Stith's App'x at 64.

Brantley and Stith now appeal.

_____

[1]Nonetheless, this version of § 1B1.10(b)(2)(B) stated that a reduction "generally would not be appropriate" where a defendant had received "a non-guideline sentence determined pursuant to 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005)."

**II.      Discussion**

"We review the district court's interpretation of statutes and the [g]uidelines *de novo*."

*United States v. Savoy*, 567 F.3d 71, 72 (2d Cir. 2009) (per curiam). Similarly, we review *de novo* any questions of constitutional interpretation raised by a district court's application of the guidelines. *See United States v. Awadallah*, 349 F.3d 42, 51 (2d Cir. 2003).

Brantley and Stith advance two, alternative arguments. First, they argue that § 1B1.10(b)(2)(A) does not bind district courts for four different reasons: (1) the enactment of § 1B1.10(b)(2)(A) exceeded the authority that the Commission exercises under 28 U.S.C. § 994(u); (2) the enactment of § 1B1.10(b)(2)(A) required the Commission to exercise legislative power in violation of the Constitution; (3) § 1B1.10(b)(2)(A) usurps power that the Constitution reserves for the judiciary; and (4) the Commission failed, in enacting § 1B1.10(b)(2)(A), to comply with the notice-and-comment procedures required by 5 U.S.C. § 553. We have recently addressed each of these contentions. *See United States v. Johnson*, No. 12-921, slip op. at 8-17 (2d Cir. May 23, 2013). Specifically, we held in *Johnson* that: (1) "[i]n amending § 1B1.10[,] . . . the Commission has done precisely that which it was permitted, and congressionally encouraged, to do," *id.* at 11; (2) "Congress has . . . sufficiently instructed the Commission as to both the contours of its authority . . . and the means by which it may [exercise that authority]," *id.* at 13-14; (3) "the Commission [has not] . . . wrongfully limit[ed] judicial powers," *id.* at 16; and (4) "the Commission's failure to follow procedures prescribed under [5 U.S.C. § 553,] . . . which [were] not required to amend a policy statement such as § 1B1.10, can[not] render that subsection invalid," *id.* at 17. Thus, for the reasons set forth in *Johnson*, we agree with the district court that § 1B1.10(b)(2)(A) prohibited any reduction of Stith's and Brantley's sentences to a term of imprisonment that fell below their amended guideline ranges.

-6-

Second, Stith and Brantley argue that, even if § 1B1.10(b)(2)(A) bound the district court, it nonetheless did not prohibit the district court from departing under § 4A1.3. Section 4A1.3(b)(1) permits departures whenever a "defendant's criminal history category substantially over-represents the seriousness" of his past crimes. Stith and Brantley contend that courts may incorporate § 4A1.3 departures into the amended guideline range that, under § 1B1.10(b)(2)(A), limits the scope of a defendant's reduction. Section 1B1.10(b)(2)(A) instructs courts to "determine[]" a defendant's "amended guideline range . . . under" § 1B1.10(b)(1). Section 1B1.10(b)(1), in turn, defines the "amended guideline range" as the range "that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." "In making such determination, the court shall substitute only the amend[ed guideline provisions] for the corresponding . . . provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

Section 1B1.10(b)(1)'s use of the word "applicable" has technical significance. The commentary to § 1B1.10 defines the phrase "applicable guideline range" as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a), which is determined *before consideration of any departure provision in the Guidelines Manual*." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added). Consistent with that definition, U.S.S.G. § 1B1.1(a) makes no mention of departures. Instead, under U.S.S.G. § 1B1.1(b), a court considers "[d]epatures" only after it has determined a defendant's offense level and criminal history under § 1B1.1(a). The commentary to § 1B1.1 further defines departure "for purposes of 4A1.3 (Departures Based on Inadequacy of Criminal History Category)" to mean "assignment of

-7-

a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence *outside the applicable guideline range*." U.S.S.G. § 1B1.1 cmt. n.1(E) (emphasis added). These provisions all lead to the ineluctable conclusion that a court does not depart under § 4A1.3 when calculating a defendant's applicable guideline range, but instead departs *from* the applicable guideline range under § 4A1.3 *after* having calculated that range. Consequently, the "amended guideline range," as the "range that would have been applicable to the defendant" had the relevant amendments been in effect, does not incorporate any departure a court previously granted under § 4A1.3.[2]

The commentary to § 1B1.10(b)(2) provides further support for this conclusion. Specifically, it explains that:

> If the term of imprisonment imposed [at a defendant's initial sentencing proceeding] was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in subsection (b)(2)(A) . . . applies. Thus, if the term of imprisonment imposed [based on an applicable guideline range of 70 to 87 months] . . . was a sentence of 56 months (constituting a downward departure or variance), the court . . . may[, after a guideline amendment lowers the applicable range to 51 to 63 months,] reduce the defendant's term of imprisonment, but shall not reduce it to a term less than 51 months.

U.S.S.G. § 1B1.10 cmt. n.3. In accordance with the interpretation of § 1B1.10 set forth above, this example implicitly acknowledges that courts grant departures from the applicable guideline

---

[2]One might reasonably expect that, because § 1B1.10(b)(1) uses the past tense—defining the amended guideline range as the "range that *would have been* applicable" to a defendant (emphasis added)—it refers to the definition of "applicable guideline range" that was in effect at the time of a defendant's initial sentencing. Nonetheless, the commentary to § 1B1.10 specifically provides that "the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment." U.S.S.G. § 1B1.10 cmt. n.6. Moreover, when it amended § 1B1.10 in 2011, the Commission noted that it intended to resolve a split among the different interpretations Circuit Courts of Appeals had given the phrase "applicable guideline range." U.S.S.G. § 1B1.10 app. C, amend. 759 (2011). Referring to earlier interpretations of the phrase "applicable guideline range," then, would recreate the split that the Commission hoped to resolve. Accordingly, because the district court reduced Brantley's and Stith's sentences on November 16, 2011, the version of § 1B1.10 that took effect on November 1, 2011 governs their reduction proceedings.

range rather than when calculating that range, and further that courts should not incorporate previously granted departures into a defendant's amended guideline range.

Resisting this conclusion, Brantley and Stith make two arguments. First, they contend that a court refers to a defendant's "applicable guideline range" only when determining her eligibility for a reduction under § 1B1.10(a)(2)(B), and not when determining the permissible extent of a reduction under § 1B1.10(b)(2)(A). This argument, however, ignores the relationship between the "applicable guideline range" and the "amended guideline range." Under § 1B1.10(a)(2)(B), a defendant is not eligible for a reduction if an amendment "does not have the effect of lowering the defendant's applicable guideline range." In the absence of any change to the applicable guideline range, speaking of an "amended guideline range" makes little sense. Where an amendment does change the applicable guideline range, however, the court can calculate a new "applicable" range by "substitut[ing] . . . the amend[ed guideline provisions] for the corresponding . . . provisions that were applied when the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). Section 1B1.10(b)(1) defines this new, applicable range as the "amended guideline range." The phrase "amended guideline range," then, is simply the name by which the guidelines distinguish one applicable guideline range—*i.e.*, the one that incorporates guideline amendments—from another—*i.e.,* the one that applied under earlier versions of the guidelines. It follows, then, that courts should use the same procedure to calculate both the applicable guideline range and the amended guideline range, departing from that procedure in the case of the amended guideline range only to "substitute . . . the [relevant guideline] amendments." *Id.* Under the guidelines, courts applying this procedure should not "consider[] any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10 cmt. n.1(A).

Brantley and Stith next argue that, even if courts should not incorporate *other* departures into a defendant's amended guideline range, they should nonetheless treat departures under § 4A1.3 differently. Brantley and Stith note that the "applicable guideline range" is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to 1B1.1(a)." U.S.S.G. § 1B1.10 cmt. n.1(A). Under U.S.S.G. § 1B1.1(a)(6), a court must "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four." According to Brantley and Stith, a court departs under § 4A1.3 when "determin[ing] the defendant's criminal history category under Part A of Chapter Four," and thus does so in the process of calculating a defendant's applicable guideline range.

This argument, however, proves too much. Subsections 1B1.1(a)(2)-(4) instruct courts to make various determinations under Chapters Two and Three of the guidelines. Because these chapters contain numerous departures, one could apply Brantley's and Stith's argument to many, if not most, of the departures created by the guidelines. We have previously rejected this argument precisely because of its staggering breadth, finding that "[n]o one could argue that . . . the various . . . departures sprinkled throughout Chapters Two and Three amount to departures *to*, rather than *from*, the applicable range, even though [§ 1B1.1(a)] require[s] judges to apply Chapters Two and Three before determining the applicable range." *United States v. Rivera*, 662 F.3d 166, 181 n.14 (2d Cir. 2011).

Moreover, as described above, the plain language of the guidelines forecloses Stith's and Brantley's argument that courts depart under § 4A1.3 when calculating the applicable guideline range. Most significantly, the commentary to § 1B1.1 defines departure "for purposes of 4A1.3" as the "assignment of a criminal history category other than the otherwise applicable criminal

history category, in order to effect a sentence *outside the applicable guideline range*." U.S.S.G. § 1B1.1 cmt. n.1(E) (emphasis added). If the applicable guideline range incorporated departures under § 4A1.3, then such departures would result in sentences inside, rather than outside, of that range. *See also* U.S.S.G. § 1B1.10 cmt. n.1(A) (defining applicable guideline range as the range determined "before consideration of *any* departure provision in the Guidelines Manual" (emphasis added)).

The guidelines' clarity on this point is no coincidence. In support of their argument, Stith and Brantley rely heavily on a decision by this Court and another by the Fourth Circuit. *See generally United States v. Munn*, 595 F.3d 183, 194-95 (4th Cir. 2010) ("[T]he Application Instructions' plain text . . . specifies that a sentencing court applies all of Chapter Four—including section 4A1.3—*before* calculating a defendant's applicable guideline range."); *United States v. McGee*, 553 F.3d 225, 229 (2d Cir. 2009) ("acknowledg[ing] that U.S.S.G. § 1B1.10 can be read to permit a reduced sentence only where the defendant's *pre-departure* sentencing range is" affected by a subsequent amendment, but concluding, under the rule of lenity, that "there is ambiguity as to wh[at] the Sentencing Commission intended"). In its commentary to the 2011 guidelines amendments, the Commission noted that the Sixth, Eighth, and Tenth Circuits had disagreed with the cases on which Brantley and Stith rely, creating a split among Circuit Courts of Appeals. U.S.S.G. app. C, amend. 759 (2011). Considering this split, the Commission chose to "adopt[] the approach of the Sixth, Eighth, and Tenth Circuits" by "amend[ing] Application Note 1 [to § 1B1.10] to clarify that the applicable guideline range . . . is the guideline range determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the *Guidelines Manual*." *Id.* In doing so, the Commission rejected

the approaches set forth in *Munn* and *McGee*. Thus, the Commission has foreclosed the exact approach that Brantley and Stith now advocate.

We confess that, as a matter of policy, we question why a court should not have the discretion to give defendants the benefit of § 4A1.3 departures during sentencing reduction proceedings. A criminal history category that exaggerates a defendant's past crimes during an initial sentencing will continue to do so at a reduction proceeding. While the Commission apparently worried that retroactively amending the crack-cocaine guidelines could result in a windfall for defendants whose sentences already accounted for the disparity that the FSA sought to rectify, 76 Fed. Reg. 24960, 24973 (May 3, 2011), the policy adopted in § 1B1.10(b)(2)(A) sweeps much more broadly, affecting even defendants, such as Brantley and Stith, who benefitted from departures that were unrelated to prior versions of the crack-cocaine guidelines.[3] In any event, we recognize that Congress has given the Commission the authority to resolve these policy questions. *See Dillon v. United States*, 130 S. Ct. 2683, 2692-93 (2010). Because the Commission has clearly stated that a defendant's "amended guideline range" does not incorporate any previously granted departure under § 4A1.3, we affirm the district court's decision.

III.     Conclusion

Accordingly, for the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

---

[3]The Commission also intimated that creating "a single limitation applicable to both departures and variances" would "avoid unwarranted sentencing disparities." 76 Fed. Reg. 41332, 41334 (July 13, 2011). Of course, treating differently situated defendants similarly results in "disparities" just as surely as treating similarly situated defendants differently.