In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2718

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE DIGGS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 03 CR 516 — **Virginia M. Kendall**, *Judge.*

ARGUED JUNE 4, 2014 — DECIDED SEPTEMBER 24, 2014

Before WOOD, *Chief Judge* and CUDAHY, and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge*. This case deals with the constitutional effect of the US Sentencing Commission's amendment to § 1B1.10, which is a policy statement essentially prohibiting courts from applying retroactive amendments to the guidelines to reduce the sentence of any defendant which was already below the minimum of the amended guidelines. The district court properly applied § 1B1.10 to Diggs' case,

found that this does not offend the *ex post facto* clause and finally, found that the commission did not exceed its delegated authority in its attempt to revise this policy. Accordingly, we affirm.

Willie Diggs pleaded guilty, with plea agreement, to possession with intent to distribute 50+ grams of crack cocaine and 500+ grams of powder cocaine. At the plea hearing Diggs also admitted that he supplied wholesale quantities to his co-defendants.

At sentencing, the district court accepted the findings of the Pre-Sentencing Report, which recommended that Diggs be held accountable for 5.7 kilos of crack cocaine and 2 kilos of powder cocaine, resulting in a base offense level of 38. The court also applied two two-level enhancements for using a dangerous weapon and having a leadership role in the conspiracy. Neither of these enhancements was challenged. In addition, Diggs sought cooperation credit for assistance he gave the government in apprehending his co-conspirators. However, the government opposed this motion on the basis that Diggs allegedly tipped off his co-conspirators, negating the validity of any information he provided. Ultimately, the court determined that Diggs' cooperation was not fruitful and did not therefore merit a favorable adjustment in his sentencing guidelines, but the court did consider Diggs' cooperation as a mitigating factor when setting the sentence.

According to the advisory guidelines, Diggs' sentence was calculated to be 360 months to life. However, the court was impressed by the change Diggs had shown since being incarcerated and was moved by Diggs' testimony regarding the regret he felt for his crimes and his hopes for the future.

As a result, the court sentenced Diggs to 282 months—78 months below the low end of the advisory guidelines.

After Diggs was sentenced, Amendment 750 took effect, which retroactively lowered the base offense level for possession with intent to distribute crack cocaine. Under the retroactive amendment, Diggs' advisory guideline was 292–365 months. Diggs then moved to reduce his sentence, arguing that the original 78 month downward variance he received should be automatically applied to the retroactive guidelines resulting in a new sentence of 214 months. The court rejected Diggs' motion on the basis that USSG § 1B1.10 prohibits a court from reducing a defendant's sentence to a term less than the minimum of the amended guideline range unless the original sentence had been reduced in response to a government motion for substantial assistance. On appeal the main thrust of Diggs' argument is that the district court should have applied § 1B1.10 as it existed at the time of Diggs' offense, which he argues would have resulted in a 78 month downward variance from the *amended* guideline range, or 214 months.

## I.

The *ex post facto* clause prohibits "the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). By nature, a § 3582(c)(2) proceeding to reduce a sentence does not have any bearing on the ex post facto clause, because it cannot increase a punishment. On the contrary, a § 3582(c)(2) proceeding only applies when a change in sentencing has occurred which will make a law *more lenient*. In fact, the Supreme Court has specifically said in a related context that there is no constitutional require-

ment that entitles defendants to such retroactive application of a subsequent guidelines amendment. *Dillon v. United States*, 560 U.S. 817, 828 (2010). Instead, the central focus of the *ex post facto* clause is "not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30. Due to the nature of Amendment 750 and the § 3582 proceedings as only working to reduce certain sentences, there is no danger of legislative excess resulting in *increased* punishment, and neither is there a danger of a lack of fair notice, because the policy amendment to § 1B1.10 was simultaneously enacted with Amendment 750.

Diggs primarily argues that the effect of the policy amendment to § 1B1.10 was to make his sentence harsher, because if Amendment 750 was enacted at any time between the time he was sentenced and the policy amendment in 2011, he would be eligible for that sentence reduction. Thus, his argument is as follows: the policy amendment was an ex post facto law, because it "resulted in [Diggs] receiving a harsher sentence than he would have received under the law in effect at the time he committed his offense." However, that final statement is not complete. A more appropriate summarization of Diggs' argument is that the policy amendment was an *ex post facto* law, because it resulted in a harsher sentence *than Diggs' would have received if Amendment 750 was in effect at the time of Diggs' original sentence.* This missing language ultimately dooms Diggs' argument, because he has no constitutional entitlement to a retroactive reduction of his sentence. *Dillon*, 560 U.S. at 828. Thus, it is ultimately unimportant that the policy amendment changed

the policy in effect at the time of Diggs' sentencing because it affected a law that became *more lenient*.

This is the key distinction between Diggs' case and those he cites, like *Weaver*. There, Florida amended an existing policy to make it harder to earn good behavior credits (which result in reduced sentences). *Weaver,* 450 U.S. at 30. In that case, the leniency policy already existed and was subsequently taken away. *Id.* Here, however, the leniency policy (Amendment 750) was enacted *after* Diggs was sentenced. He simply has no entitlement to the retroactive application of favorable policies or amendments enacted after his sentencing.

Thus, we think it clear that the amendment to the policy guidelines had no effect of increasing Diggs' punishment, but merely attempted to limit the extent to which favorable amendments to the guidelines can reduce a sentence. It is true that this policy amendment does negatively impact Diggs' sentence, but only because he is not among the narrow category of defendants to which this amendment retroactively apples, not because his punishment has been retroactively increased.

## II.

Diggs also argues that the Commission exceeded its authority in amending § 1B1.10 because it essentially required the district court to withdraw the 78 month variance granted during the original sentencing. This argument mischaracterizes the way the district court arrived at Diggs' sentence. The court specifically stated that it was not following a formula, that it was not deciding that Diggs deserved a 78 month variance and then subtracted that specific variance from the

guidelines. Instead, the district court analyzed the § 3553(a) factors and determined that the nature of the crime, the characteristics of the defendant, and the defendant's cooperation warranted a sentence of 282 months.[1] In this case, then, it is simply not true that Diggs was entitled to the 78 month variance, because he received a sentence which the sentencing judge deemed appropriate given the totality of the circumstances. Thus, the Commission did not require the district court to withdraw a specific variance, but instead circumscribed the application of Amendment 750, which is within its authority to do. In fact, the Commission is *required* to issue policy statements, which "specify in what circumstances and by what amount the sentence of [prisoners who qualify for the amendment] … may be reduced." 28 U.S.C. § 994(u). Therefore, the policy amendment which Diggs challenges was not only authorized, but in fact a fulfillment of the Commission's statutory duty.

Finally, Diggs challenges the carve out in § 1B1.10 which allows a court to further reduce a sentence already below the amended guideline range if the court granted a motion seeking credit for substantial assistance to authorities. Diggs argues that this impermissibly requires the district court to consider the assistance factor above all other § 3553(a) factors. However, this argument overlooks the fact that a court

---

[1] Specifically the court said: "I think 30 years is too high, but I certainly don't think you should get the 20 years that you would get had you got the cooperation motion that you expected … I don't have a magically correct answer. I am going to sentence you to 23 1/2 years. And I think that that is a fair sentence given the enormity of the crime, the number of people who were hurt, the duration over which it took place …"

must first determine whether §1B1.10 allows a reduction *before* it considers *any* of the § 3553(a) factors. Therefore, the amended § 1B1.10 effectively *cannot* limit the court's use of the § 3553(a) factors, because it involves a threshold analysis, separate from the court's § 3553(a) analysis.

Ultimately, the Commission has broad authority, and is in fact required, to issue policy statements about the application of its guidelines, and to determine whether and to what extent amendments will be retroactive. *Dillon*, 560 U.S. at 826. The Commission did not exceed that authority here.

AFFIRMED.