RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-2592

JASON EDWARD BECKHAM,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cr-00085—Robert J. Jonker, District Judge.

Decided and Filed: September 28, 2016

Before: ROGERS, SUTTON, COOK, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Britt M. Cobb, WILLEY & CHAMBERLAIN, LLP, Grand Rapids, Michigan, for Appellant. Stephen P. Baker, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

COOK, Circuit Judge. The United States Sentencing Commission occasionally amends the Sentencing Guidelines and must decide whether, and to what extent, defendants sentenced under the old Guidelines may benefit from the change. In 2011, the Commission revised the Guidelines Manual ("U.S.S.G.") to generally prohibit district courts from reducing a sentence below a defendant's amended Guidelines range. Appellant Jason Beckham moved to modify his sentence when the Commission reduced the Guidelines for most drug offenses in 2014. But

1

because his current sentence is below his amended Guidelines range, the district court denied his motion. On appeal, Beckham questions the court's calculation of his amended Guidelines range and raises an ex post facto challenge to the 2011 amendment. Discerning no error, we **AFFIRM.**

I.

In 2009, Beckham pleaded guilty without a plea agreement to charges of conspiring to distribute more than 500 grams of cocaine and an unspecified amount of ecstasy. The probation office prepared a presentence report, relying on the 2009 version of the Sentencing Guidelines. At sentencing, the district court determined that Beckham's total offense level was 30 and that his criminal-history category was six, resulting in a Guidelines range of 168–210 months' imprisonment. The court then departed downward under U.S.S.G. § 4A1.3 to a criminal-history category of four, finding that the Guidelines overstated the severity of Beckham's criminal past. The district court sentenced Beckham to 135 months' imprisonment.

In 2014, the Sentencing Commission retroactively lowered the base-offense level for most drug crimes, including Beckham's. U.S.S.G. App. C Supp., at 64–74. Hoping to benefit, Beckham moved to modify his sentence under 18 U.S.C. § 3582(c)(2). Unfortunately for Beckham, the Commission had previously issued Amendment 759, which "preclude[s] district courts from reapplying any departure or variance in a sentence reduction" and forbids courts from reducing a sentence below an amended Guidelines range, with one narrow exception. *United States v. Taylor*, 815 F.3d 248, 250–51 (6th Cir. 2016).

The probation office calculated Beckham's amended Guidelines range as 140–175 months based on a revised offense level of 28 and his pre-departure criminal-history category of six. Because Beckham's current sentence (135 months) is below the low end of his amended Guidelines range (140 months), the probation office found him ineligible for a further reduction. The district court agreed, and Beckham appealed.

II.

Beckham first argues that the district court should have included his criminal-history departure in calculating his amended Guidelines range. Were Beckham correct, his amended Guidelines range would be 110–137 months, making him eligible for a reduced sentence under § 3582(c)(2). Because Beckham did not raise this argument below, we review for plain error. *United States v. Trammel*, 404 F.3d 397, 401 (6th Cir. 2005); *see also United States v. Brookins*, 410 F. App'x 918, 920 (6th Cir. 2011) (applying plain-error standard to decision denying a § 3582(c)(2) motion).

The district court properly excluded Beckham's § 4A1.3 departure when determining his eligibility for a reduced sentence. Section 3582(c)(2) authorizes district courts to reduce a sentence only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Under the governing policy statement, § 1B1.10, defendants qualify for § 3582(c)(2) relief only if a Guidelines amendment "ha[s] the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). And in 2011, the Sentencing Commission issued Amendment 759, which amended § 1B1.10 to clarify that a defendant's "applicable guideline range" is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined *before* consideration of *any departure provision* in the Guidelines Manual or any variance." *See id.* § 1B1.10 cmt. n.1(A) (emphasis added); *id.* App. C, Vol. III, at 416. Amendment 759 also instructs that courts "shall not" reduce a defendant's sentence "to a term that is less than the minimum of the amended guideline range," with one exception not relevant here. *Id.* § 1B1.10(b)(2)(A); *id.* App. C, Vol. III, at 420. The upshot is that courts may not reapply departures received at sentencing in computing a defendant's amended Guidelines range. *See, e.g., Taylor*, 815 F.3d at 250–51; *United States v. Hogan*, 722 F.3d 55, 60 (1st Cir. 2013); *United States v. Montanez*, 717 F.3d 287, 293–94 (2d Cir. 2013); *United States v. Boyd*, 721 F.3d 1259, 1264 (10th Cir. 2013); *United States v. Hippolyte*, 712 F.3d 535, 541 (11th Cir. 2013).

Accordingly, a straightforward application of § 3582(c)(2), the Guidelines, and circuit precedent precluded the district court from reapplying Beckham's § 4A1.3 departure in calculating his amended Guidelines range. *See, e.g., Taylor*, 815 F.3d at 250–51; U.S.S.G.

§ 1B1.10 cmt. n.1(A). And because Beckham's current sentence already falls below that range, the district court could not further reduce his sentence. *See Taylor*, 815 F.3d at 250–51; 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(b)(2)(A).

In an effort to elude this authority, Beckham points to the first clause of the § 1B1.10 commentary, defining "the applicable guideline range" as that which "corresponds to the . . . criminal history category determined pursuant to 1B1.1(a)." U.S.S.G. § 1B1.10 cmt. n.1(A). Because § 1B1.1(a)(6) instructs courts to "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four," which includes § 4A1.3, Beckham argues that § 4A1.3 adjustments are "part of the applicable guideline range calculus," at least as applied to non-career offenders like himself. (Appellant Brief at 11, 16.) Beckham supports treating career offenders and non-career offenders differently by noting that many of the cases prompting the Commission to define "applicable guideline range" involved defendants sentenced under the Guidelines' career-offender provision, § 4B1.1. (*Id.* at 15.) And because career-offender criminal-history categories are calculated under Part B of Chapter 4, which § 1B1.1(a)(6) says to calculate after applying Part A, he argues that § 4A1.3 adjustments must be "departures" as applied to career offenders, but "part of the applicable guideline range" as applied to non-career offenders. (*Id.* at 16.) If Beckham were correct, Amendment 759 would prevent district courts from reapplying a § 4A1.3 departure just to career offenders seeking a § 3582(c)(2) modification.

Beckham's plain-language argument that the § 1B1.10 commentary makes § 4A1.3 adjustments part of the applicable-guideline-range calculus has some facial plausibility. However, ultimately the second clause of the "applicable guideline range" definition in the § 1B1.10 commentary "qualif[ies] the preceding language by eliminating any consideration of departures that may occur in following § 1B1.1(a)." *Boyd*, 721 F.3d at 1263. That qualification also answers Beckham's argument that § 4A1.3 applies differently to career offenders and non-career offenders. Section 1B1.10's second clause instructs that a defendant's "applicable guideline range . . . is determined before consideration of *any departure provision in the Guidelines Manual*." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added). Thus, the question is whether § 4A1.3 is a "departure provision." The Guidelines say it is. Start with § 4A1.3's title—"*Departures* Based on Inadequacy of Criminal History Category"—and look to how the

Guidelines define "departure."  U.S.S.G. § 4A1.3 (emphasis added).  For the purposes of § 4A1.3, departure means "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence *outside the applicable guideline range*."  U.S.S.G. § 1B1.1 cmt. n.1(E) (emphasis added).  Beckham's reading would mean that a § 4A1.3 departure is "part of the applicable guideline range," at least in some cases, even though it always "effect[s] a sentence outside the applicable guideline range,"  U.S.S.G. § 1B1.1 cmt. n.1(E).  We reject Beckham's interpretation because it is "nonsensical to have an 'applicable guideline range' that is the *result* of a departure."  *United States v. Pembrook*, 609 F.3d 381, 385 (6th Cir. 2010).

### III.

Beckham next argues that *if* Amendment 759 barred the district court from reapplying his criminal-history departure, the amendment violates the Constitution's Ex Post Facto Clause. He notes that the Guidelines in use at the time of his crime permitted courts to reduce a sentence below an amended Guidelines range to reflect departures.  *See* U.S.S.G. § 1B1.10(b) (2010). Because the Sentencing Commission removed that discretion after he committed his crime, Beckham deduces an ex post facto violation.

"The ex post facto clause bars the application of greater criminal penalties than those which existed at the time a crime occurred."  *United States v. Carter*, 500 F.3d 486, 491 (6th Cir. 2007) (citing *Johnson v. United States*, 529 U.S. 694, 699 (2000)).  "The touchstone of [our] inquiry is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'"  *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013) (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)).  This includes a change in law that negatively affects a sentence reduction to which a prisoner was entitled at the time he committed his crime.  *See Weaver v. Graham*, 450 U.S. 24, 33–34 (1981).  We review ex post facto challenges de novo.  *United States v. Welch*, 689 F.3d 529, 532 (6th Cir. 2012).

We discern no ex post facto problem here.  Although Beckham's argument presents an issue of first impression in this circuit, every circuit to consider it has rejected it, and for good reason.  The Ex Post Facto Clause forbids a change in law that *increases* the potential

punishment for past conduct. *See Peugh*, 133 S. Ct. at 2081–82; *Carter*, 500 F.3d at 491. Amendment 759 does no such thing; it simply restricts the district court's discretion to *reduce* a sentence pursuant to a future Guidelines amendment, which prisoners have no entitlement to, *see Dillon v. United States*, 560 U.S. 817, 828 (2010). Thus, a decision by the Sentencing Commission to limit the class of defendants who may benefit from a future amendment "does not have any bearing on the ex post facto clause." *United States v. Diggs*, 768 F.3d 643, 645 (7th Cir. 2014). The Courts of Appeals are in accord. *See Diggs*, 768 F.3d at 645–46; *United States v. Thompson*, 825 F.3d 198, 205–06 (3d Cir. 2016); *United States v. Brown*, 401 F. App'x 994, 995 (5th Cir. 2010) (per curiam); *United States v. Colon*, 707 F.3d 1255, 1258–59 (11th Cir. 2013).

Beckham distinguishes these out-of-circuit cases on the grounds that they involved career offenders or defendants who benefited from variances, not departures. *See Colon*, 707 F.3d at 1257; *Diggs*, 768 F.3d at 645. But those are distinctions without a difference. Each case involved defendants who, like Beckham, sought to benefit from Guidelines amendments that were issued after they committed their crimes. But the courts found no ex post facto problem because the defendants were not entitled to the future amendment when their crimes occurred. *See Diggs*, 768 F.3d at 646; *see also Colon*, 707 F.3d at 1258. The same is true here.

Beckham's reliance on *Weaver v. Graham* is also misplaced. In *Weaver*, the Supreme Court invalidated a Florida law that retroactively reduced a prisoner's early release eligibility for good conduct. 450 U.S. at 32–36. Because early release time is "one determinant of [a defendant]'s prison term," *id.* at 32, constricting its availability "ma[de] more onerous the punishment for crimes committed before [the law's] enactment," *id.* at 36. Unlike *Weaver*, where the good-conduct provision was in place at the time of the defendant's offense, the Sentencing Commission would not reduce the drug guidelines until 2014, years after Beckham committed his crime. Accordingly, neither Amendment 759 nor the drug-guidelines amendment could act as a "determinant" of Beckham's prison term at the time he committed his crime. *Id.* at 32.

IV.

The district court lacked authority to reapply Beckham's criminal-history departure in calculating his amended Guidelines range. Amendment 759's removal of that authority presents no ex post facto violation. We accordingly **AFFIRM**.