In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1975

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DONNELL JEHAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 CR 464-2 — **Elaine E. Bucklo**, *Judge.*

ARGUED JANUARY 30, 2020 — DECIDED FEBRUARY 6, 2020

Before MANION, KANNE, and SYKES, *Circuit Judges.*

PER CURIAM. Donnell Jehan appeals the denial of his second motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 782 to the United States Sentencing Guidelines. The district court determined that Jehan was ineligible for a reduction because the amendment did not change his guidelines range. On appeal, Jehan primarily argues that the amendment *did* change his guidelines range, because his binding plea

agreement required the district court to find him responsible for quantities of narcotics that, under the amendment, produce a lower guidelines range. Because the district court correctly concluded that Jehan was responsible for greater quantities of narcotics, we affirm.

## I. BACKGROUND

Over the course of 15 years, Jehan rose through the ranks of a Chicago street gang, eventually leading its conspiracy to distribute cocaine base ("crack"), cocaine, and heroin. *United States v. Jehan*, 876 F.3d 891, 892 (7th Cir. 2017). After he and other members of the gang were indicted for this conspiracy, Jehan fled and remained a fugitive for four years. *Id.*

After Jehan was finally arrested, the parties entered a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Jehan admitted responsibility for conspiring to distribute more than 150 kilograms of cocaine, more than 30 kilograms of heroin, and more than 1.5 kilograms of crack. These quantities of heroin and cocaine matched the thresholds for the highest base offense level on the drug-quantity table at the time; the quantity of crack was at the low end for the second-highest base offense level on the table. *See* U.S.S.G. § 2D1.1(c)(1), (2) (2007). The parties agreed that, based on the quantities of heroin and cocaine, Jehan's total offense level was 43 (base offense level of 38, plus eight levels for other enhancements, minus three levels for acceptance of responsibility) and his criminal history category was I, yielding a guidelines range of life in prison. In exchange for his acceptance of responsibility and aid to the government in other cases, the Rule 11(c)(1)(C) agreement specified that Jehan would receive a 300-month sentence.

The probation office prepared a Presentence Investigation Report ("PSR"), which detailed that "drug spots" operated by Jehan brought in $200,000 to $300,000 per day; one dealer paid $80,000 per month to work in Jehan's territory and earned $45,000 per day from the heroin he sold there; another dealer sold five or six 25- or 50-packs of crack each day in Jehan's territory; and another dealer sold about 1.5 kilograms of crack per week for Jehan during a period of about two years. The probation office concluded that these facts supported finding Jehan responsible for conspiring to distribute more than 150 kilograms of cocaine, more than 30 kilograms of heroin, and more than 1.5 kilograms of crack.

The district court adopted the PSR, accepted the parties' binding agreement, and sentenced Jehan to a term of 300 months' imprisonment and five years' supervised release. *Jehan*, 876 F.3d at 892. In 2015, the court reduced Jehan's sentence to 240 months because of assistance that he provided to the government in another case. *Id.* at 893.

In 2016, Jehan moved to reduce his sentence under § 3582(c)(2) in light of Amendment 782, which retroactively increased the drug quantities required for each base offense level for most federal drug offenses. The district court denied Jehan's motion, determining that he was ineligible for a reduction under § 3582(c)(2) because his sentence was "based on" the parties' Rule 11(c)(1)(C) agreement, not the Guidelines. Jehan appealed, and this court affirmed, following then-controlling circuit precedent. *Id.* at 893 (citing *United States v. Dixon*, 687 F.3d 356, 359–60 (7th Cir. 2012)).

After the Supreme Court abrogated *Dixon* in *Hughes v. United States*, 138 S. Ct. 1765 (2018), and held that relief under § 3582(c)(2) should be available to defendants with plea

agreements under Rule 11(c)(1)(C), Jehan filed a second § 3582(c)(2) motion, again based on Amendment 782. Jehan contended that his guidelines calculation would have been lower had the amendment been in place at his original sentencing, and he posited that his sentence should be 13 years of actual time served.

The district court denied the motion. As the court explained, "[t]he facts contained in the PSR—to which defendant did not object—support a finding that [the] defendant was accountable for such large quantities of narcotics that his base offense level and corresponding guidelines range are not reduced by" Amendment 782. In a footnote, the district court summarized those facts:

> As detailed in the PSR, defendant conspired for more than ten years with other members of the Black Disciples street gang ... to distribute, and to possess with intent to distribute, large quantities of narcotics. Among other evidence relevant [to] drug quantities for which defendant was accountable, the PSR cited evidence that drug spots he operated brought in hundreds of thousands of dollars *per day*. One witness reported selling 1.5 kilos of [crack] *per week* for defendant and one of his co-defendants for a two-year period.

(citations omitted).

## II. ANALYSIS

On appeal, Jehan first argues that the district court did not make any factual findings that supported its conclusion that he was ineligible for a sentence reduction. This assertion is simply not right. Although the district court did not specify

exact drug quantities, it adopted facts from the PSR and attributed to Jehan "such large quantities of narcotics that his base offense level and corresponding guidelines range are not reduced" by Amendment 782. Even if the district court's order is cursory, a cursory order does not necessarily require reversal. *See United States v. Brown*, 836 F.3d 827, 830 (7th Cir. 2016). From context, it is clear that the district court held Jehan responsible for the quantities of narcotics necessary for the highest base offense level on the current drug-quantity table. *See* U.S.S.G. § 2D1.1(c)(1), (2) (2018).

Jehan next argues that his plea agreement bound the court to finding him responsible for only the drug quantities stipulated in his plea agreement. This argument also lacks merit. First, the plea agreement stated that Jehan was responsible for "*more than* 1.5 kilograms of crack cocaine, *more than* 150 kilograms of cocaine, and *more than* 30 kilograms of heroin." (emphasis added). Thus, by its terms, the agreement acknowledged Jehan's responsibility for "more than" the quantities listed. Second, Rule 11(c)(1)(C) agreements "bind the court" to a "specific sentence or sentencing range" only. Fed. R. Crim. P. 11(c)(1)(C). Such agreements do not bind the court to factual stipulations. *See United States v. Cole*, 569 F.3d 774, 777–78 (7th Cir. 2009).

In any event, the district court did not err when it determined that Jehan was responsible for such large quantities of heroin and cocaine that his base offense level was unchanged by Amendment 782. A district court may make new findings of fact to determine a defendant's base offense level when a retroactive amendment alters the relevant drug-quantity thresholds—so long as those findings are supported by the record and consistent with the findings made at the original

sentencing. *Brown*, 836 F.3d at 829. Here, the district court adopted the PSR after neither party objected to it at Jehan's original sentencing.[1] And, as the PSR detailed, "drug spots" operated by Jehan brought in an estimated $200,000 to $300,000 per day. The Guidelines instruct that when there is no drug seizure, sentencing courts may rely on the money that the defendant made from his dealings to determine the quantity of narcotics involved. *United States v. Are*, 590 F.3d 499, 516 (7th Cir. 2009); U.S.S.G. § 2D1.1 cmt. n.5 (2018). The high dollar earnings here support finding Jehan responsible for more than 450 kilograms of cocaine and 90 kilograms of heroin, the threshold quantities for the highest base level on the current drug-quantity table, U.S.S.G. § 2D1.1(c)(1) (2018). *See United States v. Thurman*, 889 F.3d 356, 369–70 (7th Cir. 2018) ($27,000 stash shows defendant was responsible for more than 700 grams of heroin); *Brown*, 836 F.3d at 830 (taking in millions of dollars supports finding defendant responsible for more than 450 kilograms of cocaine).[2]

---

[1] In a footnote in his brief and at oral argument, Jehan disputed the district court's characterization of the PSR as uncontested, maintaining that he had no need to object to it because his sentence did not depend upon any of its findings or recommendations. But he neither explained how he would now challenge the PSR, nor pointed to any evidence controverting it. "In the absence of actual evidence controverting the information in the PSR, *i.e.*, something more than the appellants' mere denials, it [is] not necessary for [the] court to conduct any further inquiry." *United States v. Irons*, 712 F.3d 1185, 1190 (7th Cir. 2013) (quoting *United States v. Taylor*, 72 F.3d 533, 547 (7th Cir. 1995)), *abrogated on other grounds by United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015).

[2] Although the point is not raised by Jehan, we note that it would be inconsistent with the PSR to find him responsible for the quantity of crack necessary for the highest base offense level on the current drug-quantity table—25.2 kilograms. U.S.S.G. § 2D1.1(c)(1) (2018). The PSR concluded

Finally, Jehan argues that the district court "effectively" increased his sentence by finding him responsible for greater drug quantities in violation of the *Ex Post Facto* Clause. U.S. Const. art. I, § 9, cl. 3. To support this argument, Jehan points to *Peugh v. United States*, 569 U.S. 530, 544 (2013), in which the Supreme Court held that a court may not apply the current version of the Guidelines at sentencing if the Guidelines in place when the defendant committed the crime would provide for a lower guidelines range. Jehan contends that the district court applied "a new and higher base offense level that did not exist at the time of his original sentencing," as in *Peugh*, and thereby wrongly enhanced his punishment.

That is not what happened here. At his original sentencing, the district court determined that the highest base offense level (38) applied, but it entered a lower sentence per the parties' Rule 11(c)(1)(C) agreement. In deciding Jehan's second § 3582(c)(2) motion, the court determined that the *same* base offense level (38) applied, and therefore let Jehan's sentence stand. Because the district court did not "retroactively increase[]" Jehan's punishment, but rather determined only that he was not entitled to the benefit of new, favorable policy

that Jehan was responsible for "more than 1.5 kilograms," but at the time the report was written, the quantity of crack necessary for the highest base offense level (38) was 4.5 kilograms or more; 1.5 kilograms was the threshold for the second-highest base offense level (36). U.S.S.G. § 2D1.1(c)(1), (2) (2007). Thus, the PSR implicitly concluded that Jehan was responsible for less than 4.5 kilograms of crack. Nonetheless, even if the district court did err by holding Jehan responsible for 25.2 kilograms of crack in its most recent order, the error was harmless because the quantities of heroin and cocaine are sufficient for the highest base offense level on the current drug-quantity table. *See United States v. Hill*, 645 F.3d 900, 906 (7th Cir. 2011) (error is harmless if it would not change defendant's sentence on remand).

changes, the court did not violate the *Ex Post Facto* Clause. *United States v. Diggs*, 768 F.3d 643, 646 (7th Cir. 2014).

Thus, we AFFIRM the judgment of the district court.