**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3086
_____

UNITED STATES OF AMERICA

v.

FRANKLIN THOMPSON,
a/k/a Rock, a/k/a Hard Rock

Franklin Thompson,
                              Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal Action No. 2-07-cr-00303-002)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2016

_____

No. 15-3107
_____

UNITED STATES OF AMERICA

v.

LAMAR M. GIBSON,
                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal Action No. 2-06-cr-00243-001)
District Judge: Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 21, 2016
_____

Before: GREENAWAY, JR., VANASKIE and SHWARTZ,
*Circuit Judges*.

(Opinion Filed:   June 7, 2016)

Lisa B. Freeland, Esq.
Candace Cain, Esq.
Office of the Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

   *Attorneys for Appellants*

David J. Hickton, Esq.
Rebecca R. Haywood, Esq.
Laura S. Irwin, Esq.
Office of the United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

   *Attorneys for Appellee*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Appellants Franklin Thompson and Lamar Gibson appeal the District Court's denial of their 18 U.S.C.

§ 3582(c)(2) motions for sentence reduction.[1] Section 3582(c)(2) permits a district court to exercise its discretion to reduce a sentence only if: (1) the sentence is "based on" a Guidelines range that has subsequently been lowered; and (2) a sentence reduction would be consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(2).

The Sentencing Commission's policy statement applicable here prohibits a district court from reducing a defendant's sentence unless a subsequent amendment to the Guidelines lowers the defendant's "applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). In 2011, the Sentencing Commission promulgated Amendment 759, which amended the Application Notes to § 1B1.10 to make clear that a defendant's "applicable guideline range" is to be determined *before* any departures and variances. *See* U.S.S.G. app. C, amend. 759 (Nov. 1, 2011); U.S.S.G. § 1B1.10 cmt. n.1(A).

Appellants argue that they satisfy the first prong of § 3582(c)(2) because their sentences were "based on" Guidelines ranges calculated using the subsequently-lowered base offense levels in the drug quantity table in Guidelines § 2D1.1. Even if they are correct, Amendment 759 forecloses relief for Appellants, under the second prong of § 3582(c)(2), because their pre-departure/pre-variance "applicable guideline ranges" were calculated using the base offense levels for career offenders in Guidelines § 4B1.1, which have not been lowered. Appellants argue that, since Amendment

---

[1] Although each Appellant has filed a separate appeal, we believe both appeals present similar issues of fact and law. We have consolidated the cases for purpose of appeal.

4

759 came into effect after they committed their crimes, Amendment 759 is an invalid ex post facto law.

We now hold that, although Appellants' sentences were "based on" Guidelines ranges calculated under § 2D1.1, Amendment 759 is not an ex post facto law and operates to bar a sentence reduction for Appellants. We will therefore affirm the District Court's judgment in both cases denying Appellants' motions for sentence reduction.

## I.    BACKGROUND

Appellants were both indicted in the United States District Court for the Western District of Pennsylvania for drug offenses. Gibson pled guilty in 2008 and Thompson pled guilty in 2011.[2]

### A.    *Gibson's Sentencing*

At Gibson's sentencing hearing, the District Court concluded that Gibson was a "career offender" within the meaning of § 4B1.1 and determined that the base offense levels for career offenders in § 4B1.1 (the "Career Offender Guidelines") applied. The District Court calculated Gibson's Career Offender Guidelines range to be 262 to 327 months of imprisonment.[3]

---

[2] Thompson also pled guilty to a money laundering offense, 18 U.S.C. § 1956(h), as part of the same indictment.

[3] Gibson's Career Offender Guidelines range was calculated using a criminal history category of VI, as provided for in the career offender provisions of § 4B1.1. His Career Offender Guidelines range also took into account a

However, the Government explained at the hearing that it did not oppose a downward departure from the Career Offender Guidelines range because Gibson had agreed to be sentenced at "the high end of the otherwise applicable guideline range" (*i.e.*, the Guidelines range calculated using the base offense levels from the drug quantity table in § 2D1.1 (the "Drug Guidelines")).  Gibson App. 101.  The District Court calculated Gibson's Drug Guidelines range to be 130 to 162 months of imprisonment.[4]

Pursuant to the parties' request, the District Court departed downwards from the Career Offender Guidelines range and sentenced Gibson to 162 months of imprisonment—the top end of his Drug Guidelines range.

### B.    *Thompson's Sentencing*

---

two-level reduction to the pertinent base offense level in the Career Offender Guidelines for his acceptance of responsibility and a one-level reduction for his timely notification of his intention to plead guilty.

[4] Gibson's Drug Guidelines range was also calculated using a criminal history category of VI.  Gibson had a criminal history category of VI both before and after the criminal history category enhancement provided for in the career offender provisions of § 4B1.1.  His Drug Guidelines range also took into account the base offense level reductions described in *supra* note 3.

At Thompson's sentencing hearing, the District Court similarly concluded that Thompson was a "career offender" within the meaning of § 4B1.1 and determined that the Career Offender Guidelines applied. The District Court calculated Thompson's Career Offender Guidelines range to be 262 to 327 months of imprisonment.[5]

However, the parties requested at the hearing that the District Court sentence Thompson pursuant to a Rule 11(c)(1)(B) plea agreement. *See* Fed. R. Crim. P. 11(c)(1)(B). In Thompson's plea agreement, "[t]he parties agree[d] that a . . . variance from the otherwise applicable Career Offender [Guidelines] . . . [was] warranted."[6] Thompson App. 227. Accordingly, the plea agreement calculated the agreed upon Guidelines range of 135 to 168 months of imprisonment using the pertinent base offense

---

[5] Thompson's Career Offender Guidelines range was calculated using a criminal history category of VI, as provided for in the career offender provisions of § 4B1.1. His Career Offender Guidelines range also took into account a three-level reduction to the pertinent base offense level in the Career Offender Guidelines for his acceptance of responsibility.

[6] The plea agreement refers to both a departure and variance, but the parties' statements during Thompson's sentencing make clear that they were requesting a variance and the District Court's Statement of Reasons makes clear that it determined Thompson's sentence based only on a variance.

7

level from the Drug Guidelines.[7] The parties agreed in the plea agreement that the "appropriate term of imprisonment" was 151 months—the midpoint of Thompson's Drug Guidelines range. Thompson App. 228.

Pursuant to the parties' request, the District Court varied downwards from the Career Offender Guidelines range and imposed a sentence of 151 months of imprisonment. The District Court's Statement of Reasons makes clear that the sentence was imposed pursuant to the parties' plea agreement.

C.      *Guidelines Amendments*

In 2011, after Appellants were sentenced, the Sentencing Commission promulgated Amendment 759 to the Guidelines, which included an amendment to the Application Notes to the policy statement in § 1B1.10. *See* U.S.S.G. app. C, amend. 759 (Nov. 1, 2011). Section 1B1.10 provides that a district court is not authorized to reduce a sentence under § 3582(c)(2) unless an amendment to the Guidelines has the "effect of lowering the defendant's *applicable guideline range*." U.S.S.G. § 1B1.10(a)(2)(B) (emphasis added).

---

[7] Thompson's Drug Guidelines range was calculated using a criminal history category of III, which was Thompson's pertinent criminal history category without the criminal history category enhancement provided for in the career offender provisions of § 4B1.1. His Drug Guidelines range also took into account a two-level enhancement to the pertinent base offense level in the Drug Guidelines for his plea of guilty to the money laundering offense and a three-level reduction for his acceptance of responsibility.

8

To resolve a split among the Courts of Appeals as to whether a defendant's "applicable guideline range" should be determined before or after any departures and variances, the amendment to the Application Notes defined the phrase "applicable guideline range" in § 1B1.10 to be "the guideline range that corresponds to the offense level and criminal history category determined . . . *before consideration of any departure provision in the Guidelines Manual or any variance.*" U.S.S.G. app. C, amend. 759 (Nov. 1, 2011) (emphasis added); U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added); *see United States v. Pleasant*, 704 F.3d 808, 812 (9th Cir. 2013). The amended Application Notes thus preclude a defendant from obtaining a § 3582(c)(2) sentence reduction if he has been designated a "career offender" but was actually sentenced within a subsequently-lowered non-career offender Guidelines range based on a departure or variance. *See United States v. Flemming* (*Flemming III*), 723 F.3d 407, 411−13 (3d Cir. 2013).

Several years later, in 2014, the Sentencing Commission promulgated Amendment 782 to the Guidelines, which retroactively reduced by two levels the base offense levels assigned to many drug quantities in the Drug Guidelines, including the drug quantities associated with Appellants' offenses. *See* U.S.S.G. app. C, amend. 782 (Supp. Nov. 1, 2014); U.S.S.G. app. C, amend. 788 (Supp. Nov. 1, 2014). Believing that their sentences were determined by the Drug Guidelines, Appellants filed § 3582(c)(2) motions for sentence reduction pursuant to the amendment lowering the Drug Guidelines.

Consistent with the Sentencing Commission's policy statement, the District Court concluded that Appellants' pre-departure (Gibson), pre-variance (Thompson) "applicable

9

guideline ranges" were their Career Offender Guidelines ranges, which had not been affected by Amendment 782. Accordingly, the District Court denied Appellants' motions for sentence reduction. These appeals followed.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review over a district court's decision to grant or deny a motion for sentence reduction is typically for abuse of discretion. *United States v. Mateo*, 560 F.3d 152, 154 (3d Cir. 2009). However, in this case, we exercise plenary review because we are presented with "legal questions concerning the proper interpretation of the Sentencing Guidelines," *United States v. Edwards*, 309 F.3d 110, 112 (3d Cir. 2002), and an ex post facto challenge to the Guidelines, *United States v. Audinot*, 901 F.2d 1201, 1202 (3d Cir. 1990).

## III.    ANALYSIS

A district court is authorized under § 3582(c)(2) to exercise its discretion to reduce a sentence only "where two requirements are satisfied." *United States v. Flemming* (*Flemming II*), 617 F.3d 252, 257 (3d Cir. 2010). First, the sentence must have been "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Second, the sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* We address each requirement in turn and conclude that, although

10

Appellants meet the first requirement, they cannot meet the second.

*A.     Were Appellants' Sentences "Based On" Their Drug Guidelines Ranges?*

Appellants argue that they meet the first requirement under § 3582(c)(2) because  their sentences were "based on" Guidelines ranges calculated using the Drug Guidelines in § 2D1.1, which were subsequently lowered by Amendment 782.  *See* U.S.S.G. app. C, amend. 782 (Supp. Nov. 1, 2014). The Government responds by pointing us to the District Court's designation of both Appellants as "career offenders" subject to the Career Offender Guidelines in § 4B1.1.

Our decision in *Flemming II* is instructive.    In *Flemming II*, the district court designated the defendant a "career offender," and he was thus subject to the Career Offender Guidelines.  *See* 617 F.3d at 255.  However, the district court concluded that the career offender designation "overstate[d] [the defendant's] criminal history," warranting a downward departure.    *Id.* at 255−56.    Based on this conclusion, the district court accepted the Government's recommended sentence, which was "at the top of the Guidelines range" calculated using the Drug Guidelines.  *Id.* at 256.

After examining the foregoing facts, we concluded that the defendant's sentence was, in fact, "based on" the Guidelines range calculated using the Drug Guidelines.  *See id.* at 260.    In so concluding, we observed that "[t]he Government's contention that [the defendant's] sentence was 'based on' the sentencing range calculated under the Career Offender Guidelines cannot be squared with the ordinary meaning of that phrase" because the district court had

sentenced the defendant within the Guidelines range calculated using the pertinent base offense level from the Drug Guidelines.[8]  *Id.* at 259.

Similarly, in Gibson's case, although the District Court designated him a "career offender" subject to the Career Offender Guidelines, it determined that a downward departure was warranted.  Thus, as recommended by the Government, the District Court sentenced Gibson to 162 months of imprisonment—the "high end of the otherwise applicable" Guidelines range, Gibson App. 101, which was calculated using the pertinent base offense level from the Drug Guidelines.  Gibson's case therefore falls squarely

---

[8] The Government argues that our decision in *Flemming III* undermines our holding in *Flemming II* that the defendant was sentenced "based on" his Drug Guidelines range.  *Flemming III* did no such thing.  In making its argument, the Government conflates the two distinct requirements of § 3582(c)(2).  *See United States v. Ware*, 694 F.3d 527, 533−34 (3d Cir. 2012); *Flemming II*, 617 F.3d at 260 n.11.  Our decision in *Flemming III* only addressed the second requirement of § 3582(c)(2)—whether a sentence reduction for the defendant would have been "consistent with applicable policy statements issued by the Sentencing Commission."  *See Flemming III*, 723 F.3d at 410 (quoting 18 U.S.C. § 3582(c)(2)).  The Government conceded in *Flemming III* that the first requirement—whether the defendant's sentence was "based on" his Drug Guidelines range—had been met.  *See id.* at 410 n.2.

within our decision in *Flemming II*. As such, we conclude that his sentence was "based on" his Drug Guidelines range.

Thompson's case presents a permutation of the facts in *Flemming II*, but the result is nonetheless the same. Although the District Court designated Thompson a "career offender" subject to the Career Offender Guidelines, as in *Flemming II*, it did not sentence him within his Career Offender Guidelines range. Rather, the District Court's Statement of Reasons makes clear that it imposed his sentence pursuant to the parties' plea agreement, which provided for a "variance from the otherwise applicable Career Offender [Guidelines]." Thompson App. 227. The plea agreement contained an explicit calculation of Thompson's Guidelines range using the pertinent base offense level from the Drug Guidelines and then recommended a sentence of 151 months of imprisonment—the midpoint of Thompson's Drug Guidelines range.

Thus, in sentencing Thompson to 151 months of imprisonment, as in *Flemming II*, the District Court "reverted" to the Drug Guidelines range and "imposed a sentence within that range." *Flemming II*, 617 F.3d at 259. If Amendment 782 had been in effect when Thompson was sentenced, we are convinced that the parties would have incorporated the lower pertinent base offense level from the Drug Guidelines into their plea agreement and the District Court would have accordingly sentenced Thompson based on the resultant lower Drug Guidelines range. *See id*. Under these circumstances, we have no trouble concluding that Thompson's sentence of 151 months of imprisonment was "based on" his Drug Guidelines range.

14

Because the District Court's sentences of Appellants were "based on" their Drug Guidelines ranges, and those ranges were subsequently lowered by Amendment 782, Appellants have satisfied the first requirement of § 3582(c)(2).

*B.    Would Sentence Reductions Be Consistent with the Sentencing Commission's Policy Statement in § 1B1.10?*

Appellants acknowledge that, after Amendment 759, their "applicable guideline ranges" under the Sentencing Commission's policy statement in § 1B1.10 are their Career Offender Guidelines ranges.  Accordingly, they concede that they cannot satisfy the second requirement of § 3582(c)(2) because Amendment 782 only lowered their Drug Guidelines ranges.  *See Flemming III*, 723 F.3d at 411−13.  However, Appellants argue that Amendment 759 violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, because it was enacted after they committed their crimes and retroactively denies them the benefit of a sentence reduction to which they otherwise would have been entitled.  We disagree.

The Ex Post Facto Clause "bar[s] enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000).  Accordingly, in assessing whether a law violates the Ex Post Facto Clause, we compare the punishment attached to the defendant's crime at the time of his offense with the punishment retroactively attached to the defendant's crime after the enactment of the alleged ex post facto law.  If the retroactive "change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes,'" then it violates the Ex Post Facto Clause.  *Peugh v.*

15

*United States*, 133 S. Ct. 2072, 2082 (2013) (quoting *Garner*, 529 U.S. at 250) (internal quotation marks omitted).

In arguing that Amendment 759 satisfies this standard, Appellants rely on the Supreme Court's decision in *Weaver v. Graham*, 450 U.S. 24 (1981). In *Weaver*, the defendant was sentenced to prison for fifteen years in Florida for a murder. *Id.* at 25. At the time of the defendant's offense, a Florida statute provided a formula for calculating good conduct credits that operated to shorten the sentence of each qualifying prisoner. *Id.* at 26. After the defendant was sentenced, the Florida Legislature repealed the statute and enacted a new formula that reduced the number of good conduct credits available to each qualifying prisoner. *Id.* at 26–27.

Florida contended that the new law did not violate the Ex Post Facto Clause because the old formula was not part of the defendant's "punishment" and thus its replacement with the less lenient formula did not retroactively increase the punishment for the defendant's crime. *Id.* at 31–32. In rejecting that argument, the Supreme Court observed that the "prospect of the gain time"[9] was "one determinant of [the defendant's] prison term" and was "a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed."

---

[9] "Gain time" was the phrase Florida used to describe "various kinds of time credited to reduce a prisoner's prison term," including good conduct credits. *Weaver*, 450 U.S. at 25 n.1.

16

*Id.* at 32.  Accordingly, the defendant's "effective sentence [was] altered once [that] determinant [was] changed." *Id.*

Appellants' reliance on *Weaver* is misplaced because it ignores a critical distinction between their cases and *Weaver*—the good conduct formula in *Weaver* was already in existence at the time of the defendant's offense.  Because the formula was already in existence when the defendant in *Weaver* committed his crime, and operated to reduce his sentence, its abrogation retroactively increased the "quantum of punishment" attached to his crime.  *Id.* at 33 (quoting *Dobbert v. Florida*, 432 U.S. 282, 294 (1977)) (internal quotation marks omitted).

By contrast, the Drug Guidelines reduction in Amendment 782 was not enacted until 2014, years after Appellants' offenses.  *See* U.S.S.G. app. C, amend. 782 (Supp. Nov. 1, 2014).  Since Amendment 782 was not in effect at the time of Appellants' offenses, unlike the good conduct formula in *Weaver*, it was neither a "determinant" of Appellants' sentences nor a component of their "effective sentence[s]" at that time and so we do not view it as constituting part of their "punishment."  *Weaver*, 450 U.S. at 31−32.  Therefore, the abrogation of Amendment 782 with respect to Appellants through Amendment 759 did not retroactively "increas[e] the measure of punishment attached to [Appellants'] crimes."[10]  *Peugh*, 133 S. Ct. at 2082

_____

[10] We also note that the Drug Guidelines reduction in Amendment 782 was enacted several years *after* Amendment 759 and so the sentence reduction associated with Amendment 782 was never applicable to Appellants.  When enacted, Amendment 759 operated to deny Appellants the benefit of a sentence reduction that did not yet exist.  And so,

17

(quoting *Garner*, 529 U.S. at 250) (internal quotation marks omitted).

Put another way, rendering Appellants ineligible for the sentence reduction associated with Amendment 782 does not *lengthen* the period of time they will spend incarcerated— it merely denies them the benefit of a discretionary *reduction* of that period of time. *See Garner*, 529 U.S. at 255 (observing that an ex post facto violation exists where "retroactive application [of a new law] will result in a *longer period of incarceration* than under the earlier rule" (emphasis added)); *Lynce v. Mathis*, 519 U.S. 433, 442−43 (1997). As the Supreme Court observed in *Weaver*, "[c]ritical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30 (emphasis omitted).

Accordingly, we conclude that Appellants' ex post facto argument is without merit. In so concluding, we join the other Circuits that have considered similar ex post facto challenges to § 1B1.10 of the Guidelines. *See, e.g.*, *United States v. Waters*, 771 F.3d 679 (9th Cir. 2014) (per curiam); *United States v. Diggs*, 768 F.3d 643 (7th Cir. 2014); *United States v. Colon*, 707 F.3d 1255 (11th Cir. 2013). Given that Amendment 759 presents no ex post facto problem, the Sentencing Commission's policy statement in § 1B1.10 precludes Appellants' requested sentence reductions and so

today, Amendment 759 merely operates to deny Appellants the benefit of a sentence reduction to which they have never been entitled.

18

Appellants have not satisfied the second requirement of § 3582(c)(2).

## IV.      CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court in both cases denying Appellants' motions for sentence reduction.