15-2570-cr
United States v. Ferney Dario Ramirez

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2016
No. 15-2570-cr

UNITED STATES OF AMERICA,
*Appellee*,

*v.*

FERNEY DARIO RAMIREZ,
*Defendant-Appellant*,

FREDDY ARELLANO,
*Defendant*.[*]

Appeal from the United States District Court
for the Southern District of New York.
No. 1:03-cr-1104-2 — John G. Koeltl, *Judge*.

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

ARGUED: SEPTEMBER 2, 2016
DECIDED: JANUARY 25, 2017

———————————

Before: RAGGI, CHIN, and DRONEY, *Circuit Judges*.

———————————

Appeal from a final order of the United States District Court for the Southern District of New York (Koeltl, *J.*), denying Ramirez's motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2). Ramirez argues that the district court's denial violated the *Ex Post Facto* Clause. We **AFFIRM**.

———————————

YELENA KONANOVA (Sanford I. Weisburst, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, *for Defendant-Appellant Ferney Dario Ramirez.*

AMANDA HOULE, Assistant United States Attorney (Margaret Garnett, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Appellee.*

DRONEY, *Circuit Judge*:

In May 2004, Defendant-Appellant Ferney Dario Ramirez pleaded guilty to one count of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). The district court calculated Ramirez's Guidelines range as 360 months' to life imprisonment, and sentenced Ramirez to a term of 210 months' imprisonment. In 2015, Ramirez moved for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that Amendments 782 and 788 of the Sentencing Guidelines lowered his applicable Guidelines range. The district court acknowledged that Amendment 782 reduced Ramirez's Guidelines range to 324 to 405 months' imprisonment but denied the motion because a 2011 Amendment to U.S.S.G. § 1B1.10(b) prohibited a sentence reduction where the defendant's initial sentence was below the minimum of the amended Guidelines range. On appeal, Ramirez argues that application of § 1B1.10(b) to

prohibit a sentence reduction violates the *Ex Post Facto* Clause of the United States Constitution. We affirm the district court's order.

**BACKGROUND**

A. Initial Sentencing

On September 16, 2003, Ramirez was charged in a one-count indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine. On May 6, 2004, Ramirez pleaded guilty pursuant to a plea agreement that stipulated to a Guidelines range of 151 to 188 months' imprisonment. Prior to sentencing, however, Ramirez made a motion to withdraw from his plea agreement in light of *United States v. Booker*, 543 U.S. 220 (2005), so that he could argue for a sentence below the range stipulated in the plea agreement.[1] The district court granted the motion and held a *Fatico* hearing on March 30, 2006, to resolve factual disputes between the parties regarding, *inter alia*, the amount of drugs involved and

---

[1] Ramirez still maintained his guilty plea to the drug conspiracy.

4

Ramirez's acceptance of responsibility, ultimately concluding that more than 150 kilograms of cocaine were involved in the offense and that Ramirez was not entitled to credit for acceptance of responsibility.

The district court proceeded to sentencing on May 25, 2006. Pursuant to U.S.S.G. § 2D1.1(c)(1), the district court calculated a base offense level of 38 based on the quantity of drugs involved in the offense. The district court applied a two-level enhancement under U.S.S.G. § 3B1.1 because Ramirez was an organizer, leader, or supervisor of the criminal activity, and another two-level enhancement under U.S.S.G. § 3C1.1 because Ramirez attempted to obstruct justice by influencing a witness. After refusing to grant various downward departures sought by Ramirez, the court calculated his adjusted offense level as 42. Given Ramirez's criminal

history category of II, the district court determined that the applicable Guidelines range was 360 months' to life imprisonment.[2]

The district court noted that the situation was "highly unusual" because the parties had initially stipulated to a 151-to-188-month Guidelines range before Ramirez withdrew from the plea agreement. Joint App'x at 74–75. The court also acknowledged that, despite his withdrawal from the plea agreement, Ramirez's guilty plea "did in fact save the government and the public substantial resources." *Id.* at 75. After considering the 18 U.S.C. § 3553(a) factors, the district court imposed a below-Guidelines sentence of 210 months' imprisonment, followed by five years of supervised release.

Ramirez subsequently appealed his conviction and sentence, arguing that the district court erred in granting his motion to withdraw from the plea agreement and that his counsel was ineffective for advising him to withdraw. We affirmed the district

[2] Ramirez was subject to a mandatory minimum sentence of incarceration of ten years under 21 U.S.C. §§ 846 and 841(b)(1)(A).

6

court's judgment and dismissed Ramirez's ineffective-assistance claim without prejudice. *See United States v. Ramirez*, 267 F. App'x 11, 11, 13 (2d Cir. 2008) (summary order). On May 6, 2011, the district court denied Ramirez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *See Ramirez v. United States*, No. 09-cv-4397 (S.D.N.Y. May 6, 2011), ECF No. 9. We denied a Certificate of Appealability and dismissed Ramirez's subsequent appeal. *Ramirez v. United States*, No. 11-2843 (2d Cir. Feb. 22, 2012), ECF No. 37.

B. Subsequent Changes in the Sentencing Guidelines

Under the 2002 Sentencing Guidelines in effect at the time of Ramirez's offense, as well as the 2005 Guidelines in effect when Ramirez was sentenced, district courts could generally reduce sentences in sentence-modification proceedings even where the initial sentence was below the low-end of the amended Guidelines range:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced, except that in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

U.S.S.G. § 1B1.10(b) (2002 ed.); *accord id.* § 1B1.10(b) (2005 ed.).[3] In addition, the Application Notes to that section confirmed that "the sentencing court has the discretion to determine whether, and to what extent, to reduce a term of imprisonment under this section."

*Id.* § 1B1.10(b) cmt. n.3 (2002 ed.); *id.* § 1B1.10(b) cmt. n.3 (2005 ed.).

In 2011, the Sentencing Commission adopted Amendment 759. That amendment prohibited district courts from imposing a reduced sentence that is below the minimum of the amended Guidelines range, unless the Government originally moved for a

---

[3] A district court's discretion to reduce a sentence is subject to statutory mandatory minimum sentences. *See United States v. Johnson*, 732 F.3d 109, 114–15 (2d Cir. 2013).

8

below-Guidelines sentence due to the defendant's substantial assistance to the authorities under U.S.S.G. § 5K1.1:

> (A) <u>Limitation</u>.—Except as provided in subdivision (B), the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.
>
> (B) <u>Exception for Substantial Assistance</u>.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

*Id.* § 1B1.10(b)(2) (2011 ed.). The Amendment also added Application Note 6, which stated that "the court shall use the version of this policy statement that is in effect on the date on which the court reduces the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)." *Id.* § 1B1.10 cmt. n.6 (2011 ed.).

In 2014, the Sentencing Commission issued Amendment 782 to the Guidelines, which reduced offense levels for certain controlled substance offenses by two levels. In addition, the Sentencing Commission adopted Amendment 788, which stated that Amendment 782 should be applied retroactively.

C. Sentence-Reduction Proceedings

On April 30, 2015, pursuant to 18 U.S.C. § 3582(c)(2), Ramirez made a *pro se* motion to the district court for a reduction of his sentence under Amendment 782. In response, the Government pointed out that Amendment 782 only lowered Ramirez's applicable Guidelines range to 324 to 405 months' imprisonment, and that Amendment 759 therefore rendered him ineligible for a sentence reduction because his original sentence of 210 months was below the minimum of the amended Guidelines range. Ramirez argued, however, that the district court "should utilize the language

10

provided by the Sentencing Commission at the time of his original sentencing in 2006." Joint App'x at 102.

On July 23, 2015, the district court denied Ramirez's § 3582(c)(2) motion. The district court stated that Ramirez's amended Guidelines range after application of Amendment 782 was 324 to 405 months' imprisonment. The court then followed U.S.S.G. § 1B1.10(b)(2)(A)'s prohibition, ruling that "[b]ecause the Court imposed a sentence that is below the minimum Guideline of the amended Guidelines Range, and because the Court's initial variance was not based on the defendant's substantial assistance to the Government, the defendant is not eligible for a reduction in sentence." *Id.* at 111–12.

**DISCUSSION**

On appeal, Ramirez argues that application of Amendment 759 to prohibit his sentence-reduction request violated the *Ex Post Facto* Clause of the United States Constitution. We review *de novo*

11

questions of law regarding a district court's decision to grant or deny an 18 U.S.C. § 3582(c)(2) motion. *United States v. Johnson*, 732 F.3d 109, 113 (2d Cir. 2013).[4]

Article I of the United States Constitution provides that neither Congress nor any state shall pass an "ex post facto Law." U.S. Const. art. I, § 9, cl. 3; *id.* art. I, § 10, cl. 1. The *Ex Post Facto* Clause applies, *inter alia*, to government actions that "make[] more burdensome the punishment for a crime, after its commission." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (internal quotation marks omitted); *see also Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (stating that the *Ex Post Facto* Clause applies to laws that "inflict[] a greater punishment[] than the law annexed to the crime, when committed"). A criminal or penal law is *ex post facto* when it is: (1)

---

[4] In his *pro se* § 3582(c)(2) motion, Ramirez did not expressly invoke the *Ex Post Facto* Clause. However, he did ask the district court to "utilize the language provided by the Sentencing Commission at the time of his original sentencing in 2006." Joint App'x at 102. As a result, the Government does not oppose application of *de novo* review, rather than plain error review. We need not determine whether plain error review applies, because we affirm the district court's ruling even under the less deferential *de novo* standard.

retrospective, and (2) more onerous than the law in effect on the date of the offense. *Weaver v. Graham*, 450 U.S. 24, 30–31 (1981).

A. <u>Retrospectivity</u>

In *Weaver*, the Supreme Court explained that the "critical question" in determining whether a law is retrospective is "whether the law changes the legal consequences of acts completed before its effective date." *Id.* at 31. Thus, the *Ex Post Facto* Clause attaches when a law "applies to prisoners convicted for acts committed before the provision's effective date." *Id.*

Here, the Government does not contest that Amendment 759 applies retrospectively to Ramirez. Indeed, Amendment 759's change to § 1B1.10 potentially affects the sentence ultimately served for an offense committed prior to the adoption of the Amendment and is therefore retrospective. *See United States v. Kruger*, 838 F.3d 786, 790 (6th Cir. 2016) ("There is no question that Amendment 759 applies to prisoners convicted for acts committed before the

13

provision's effective date" (internal quotation marks omitted)). Even construing this guideline change as retrospective, however, Ramirez's challenge fails under *Weaver*'s second prong.

B. <u>"More Onerous Than the Law in Effect on the Date of the Offense"</u>

Ramirez argues that the 2014 version of § 1B1.10(b) was more onerous than the law in effect on the date of his offense because it made him ineligible for a sentence reduction pursuant to Amendment 782.

Analysis of this element focuses on whether the change in law "presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013) (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)); *see also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 508–09 (1995) (stating that a law creating a mere "speculative, attenuated risk of affecting a prisoner's actual term of confinement" does not violate the *Ex Post Facto* Clause).

14

### a. Applicability of the *Ex Post Facto* Clause to § 3582(c)(2) Proceedings

The Government asserts that, by their nature, § 3582(c)(2) sentence-reduction proceedings cannot increase punishment and, therefore, the reduction limit imposed by amended § 1B1.10(b) on such proceedings cannot be deemed more onerous than the law on the date of the offense. Indeed, several of our sister circuits have adopted this position. *See infra* at Part B.b. Ramirez contends that this conclusion is contrary to the Supreme Court's decisions in *Weaver* and *Lynce v. Mathis*, 519 U.S. 433 (1997).

In *Weaver*, the petitioner had pleaded guilty to the state crime of second-degree murder. 450 U.S. at 25. On both the date of the offense and the date of sentencing, there was a state statute in place that provided a formula for deducting "gain-time credits" from the incarceratory terms of prisoners who committed no infractions while serving their sentences and faithfully performed tasks assigned to them by prison authorities. *Id.* at 26. After the petitioner's

15

sentencing, the state legislature enacted a new formula reducing the gain-time credits that prisoners could receive. *Id.* When the state applied that formula to the petitioner, he challenged the new law as *ex post facto*. *Id.* at 27.

The Supreme Court concluded that the new gain-time formula was more onerous than the law in effect on the date of the petitioner's offense and therefore violated the *Ex Post Facto* Clause. *Id.* at 35–36. It reasoned that "reduction in gain-time accumulation lengthen[ed] the period that someone in petitioner's position must spend in prison." *Id.* at 33. Because "the new provision constrict[ed] the inmate's opportunity to earn early release," it made more onerous the punishment of crimes committed before its enactment. *Id.* at 35–36.

Similarly, in *Lynce*, the Supreme Court held that retroactive cancellation of certain state gain-time credits violated the *Ex Post Facto* Clause. In 1986, the petitioner pleaded guilty to a state charge

of attempted murder. 519 U.S. at 435. While imprisoned, he accumulated a number of gain-time credits under Florida state law, including 1,860 days in "provisional credits." *Id.* at 435–36. As a result, the petitioner was released from prison in 1992. *Id.* at 435. Shortly after his release, however, the Florida legislature enacted a law that retroactively canceled provisional credits for certain inmates, including the petitioner. *Id.* at 436. As a result, the petitioner was rearrested and returned to custody to complete his sentence. *Id.*

In analyzing whether this retroactive cancellation of provisional credits violated the *Ex Post Facto* Clause, the Supreme Court stated that the "essential inquiry" was whether that cancellation "had the effect of lengthening [the] petitioner's period of incarceration." *Id.* at 442–43. The Court cited *Weaver*, and explained that the removal of early-release provisions "can constitute an increase in punishment." *Id.* at 445. Thus, even though

the cancellation of the provisional credits merely made the petitioner ineligible for early release, the Court held that the statute violated the *Ex Post Facto* Clause. *Id.* at 447; *see also Sash v. Zenk*, 439 F.3d 61, 65 (2d Cir. 2006) ("The *ex post facto* doctrine applies to any penal enactment that retrospectively disadvantages a criminal offender, whether or not it increases a criminal sentence.").

In sum, *Weaver* and *Lynce* hold that the *Ex Post Facto* Clause prohibits certain post-sentencing limitations on reductions of sentences. As we discuss in the next section, however, application of the 2014 Guidelines to Ramirez on his § 3582(c)(2) motion does not fall into the same category as the laws at issue in *Weaver* and *Lynce* because it did not lengthen his prison sentence. Accordingly, Ramirez's *ex post facto* challenge fails.

b. The "One-Book" Rule

Ramirez's argument on appeal necessarily requires the application of provisions from different Guidelines manuals from

18

different years. He claims that the law was made more onerous because the version of § 1B1.10(b) contained in the 2005 Guidelines Manual—which permitted district courts to reduce sentences in § 3582(c)(2) proceedings below the minimum of the amended range—should have been applied to a sentencing reduction authorized by Amendment 782, which took effect in 2014. Controlling precedent, however, precludes such reasoning. It requires us to compare the entire Guidelines Manual in effect at the time of the initial sentencing—which did not include Amendment 782—to the entire Guidelines Manual in effect at the time of Ramirez's § 3582(c)(2) proceeding—in which Amendment 782 authorized a guideline reduction but Amendment 759 limited the extent of such a reduction.

Specifically, in *United States v. Keller*, 58 F.3d 884 (2d Cir. 1995), *abrogated on other grounds by United States v. Mapp*, 170 F.3d 328, 338 n.15 (2d Cir. 1999), this court considered Guidelines that at the time

19

of the defendant's sentencing (the 1993 Guidelines) prescribed a higher offense level for the defendant than the Guidelines at the time of his offense (the 1989 Guidelines). *Id.* at 893. However, the 1993 Guidelines also allowed the defendant's term to be adjusted downward for time already served on the instant offense—which more than made up for the defendant's increased offense level. *Id.* Such downward adjustments were not permitted under the earlier version of the Guidelines. *Id.*

The district court applied the 1989 Guidelines at sentencing and did not adjust for time served. *Id.* at 888. On appeal, the defendant argued that the district court should have applied the 1993 Guidelines, to the extent they authorized downward adjustment for time served, but not applied those Guidelines' increase in the defendant's offense level.

We vacated and remanded for resentencing under the 1993 Guidelines, but rejected the defendant's selective application

argument. We explained that this court "adhere[s] to the so-called 'one-book' rule that most other circuits use to avoid twisting the guidelines." *Id.* at 890. Under that rule, "[a] sentencing court has no authority to pick and choose, taking one provision from an earlier version of the guidelines and another from a later version." *Id.* Instead, "[a] version of the sentencing guidelines is to be applied in its entirety." *Id.* *Keller* applied the "one-book" rule to *ex post facto* analysis, holding that "the one-book rule must . . . be employed to determine in the first instance whether an *ex post facto* problem exists." *Id.* Thus, "[w]hat is significant is a comparison of the version of the guidelines in effect at sentencing against the version in effect at the time the offense was committed."[5] *Id.* at 891. We concluded

---

[5] *Keller*'s holding is consistent with the language of the Sentencing Guidelines, which emphasizes that Guidelines Manuals should be applied in their entirety in *ex post facto* analyses. Specifically, U.S.S.G. § 1B1.11(b)(1) states that "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." The Guidelines further clarify that "[t]he Guidelines Manual in effect on a particular date shall be applied in its

that, because the 1993 Guidelines, as a whole, produced a shorter sentence for the defendant than the 1989 Guidelines, there would have been no *ex post facto* violation in applying the 1993 Guidelines in their entirety. *Id.* at 893.

In *Berrios v. United States*, 126 F.3d 430 (2d Cir. 1997), we applied *Keller* to the sentence-reduction context. There, the defendant pleaded guilty to conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. *Id.* at 431. After the defendant was sentenced, several intervening amendments were made to the Sentencing Guidelines, including an amendment that

---

entirety." U.S.S.G. § 1B1.11(b)(2). "The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual." *Id.* Section 1B1.11(b)(2) does add that "the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." However, Ramirez does not contend that Amendment 782—which substantively changed the Guidelines calculation for certain offenses—was merely a clarifying change. *See United States v. Brooks*, 732 F.3d 148, 150 (2d Cir. 2013) (per curiam) ("By reducing the base offense levels for certain crack cocaine offenses, Amendments 748 and 750 [earlier versions of Amendments 782 and 788 with similar effect] plainly effected a substantive change in the law rather than merely clarified the Commission's prior intent.").

lowered the base offense level for violations of 21 U.S.C. § 846. *Id.* at 432. Section 1B1.10(b) was also amended to provide that, when determining whether and to what extent a sentence reduction is warranted, a court should only consider those amendments specifically deemed retroactive in § 1B1.10, rather than all subsequent amendments. *Id.* While the amendment reducing base offense levels for violations of 21 U.S.C. § 846 had been deemed retroactive, the change to § 1B1.10(b) prevented the defendant from taking advantage of several other intervening amendments to the Sentencing Guidelines. *Id.* at 432–33. The district court ultimately granted the defendant's § 3582(c)(2) motion based on the base offense level amendment regarding 21 U.S.C. § 846 crimes, and reduced his sentence from 210 months' to 168 months' imprisonment. *Id.* at 433. On appeal, the defendant asserted that the § 1B1.10(b) amendment rendering him ineligible for other reductions violated the *Ex Post Facto* Clause. *Id.* at 432–33.

We rejected the defendant's challenge. Citing *Keller*, we stated that "[t]he relevant inquiry for *ex post facto* analysis is not whether a particular amendment to the Sentencing Guidelines is detrimental to a defendant, but whether application of the later version of the Sentencing Guidelines, considered as a whole, results in a more onerous penalty." *Id.* at 433. We ruled that "[a]nalogous principles apply to a situation where, as here, an already-sentenced defendant seeks to take advantage of later amendments to the Sentencing Guidelines." *Id.* We then held that there was no *ex post facto* violation because, even if the amendment to § 1B1.10(b) disadvantaged the defendant by limiting the district court's consideration to only one of the intervening amendments, the net effect of the amendments favored him.[6] *Id.*

---

[6] Both parties note that *Berrios* was decided under the "substantial disadvantage" test that the Supreme Court has since rejected. *See Peugh*, 133 S. Ct. at 2083 n.4 (acknowledging that the "substantial disadvantage" test has been abandoned and stating that the "relevant question is whether the change in law creates a sufficient or significant risk of increasing the punishment for a given crime" (internal quotation marks omitted)). However, *Berrios*'s use of the "substantial

Applying the "one-book" rule here, we conclude that there was no *ex post facto* violation. At both the date Ramirez's crime was committed and the date of his initial sentencing, § 1B1.10(b) did not restrict district courts from imposing a sentence below the amended Guidelines range at a sentence-reduction hearing. However, neither of these Guidelines Manuals included Amendment 782, which is the basis for Ramirez's eligibility for a sentence reduction. At the time of the sentence-reduction hearing, the Guidelines Manual included Amendment 782, but also the version of § 1B1.10(b)—based on Amendment 759—that prohibited district courts from reducing a sentence below a defendant's amended guidelines range. Thus, under none of the relevant Guidelines Manuals did Amendment 782 and the prior version of § 1B1.10(b) *both* exist. Indeed, the two provisions *never* coexisted in *any* Guidelines Manual.

---

disadvantage" test does not call into question its application of *Keller* and the "one-book" rule to the sentence-reduction context.

Because Amendment 782 was not a part of the Guidelines at the time of Ramirez's offense or sentencing and, without Amendment 782, Ramirez would not be entitled to a sentencing reduction even under the 2002 and 2005 versions of § 1B1.10, it cannot be said that application of the 2014 Guidelines, including the constraint on § 1B1.10 provided for by Amendment 759, "result[ed] in a more onerous penalty." *Id.*[7]

Therefore, we reject Ramirez's argument that the district court's failure to apply the prior version of § 1B1.10(b) in conjunction with Amendment 782 constituted an *ex post facto* violation. To hold otherwise would allow Ramirez to "pick and

---

[7] Our conclusion accords with the principle of fair notice that undergirds *ex post facto* jurisprudence. *See Weaver*, 450 U.S. at 30 ("Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated."); *see also Peugh*, 133 S. Ct. at 2094. Where a Guidelines amendment affording a sentencing reduction did not exist at the time a defendant committed or was sentenced for the crime of conviction, a defendant could have no expectation of such a benefit, so as to require notice at that time of any eligibility limitations.

choose" provisions from different Guidelines Manuals, in violation of the "one-book" rule. *Keller*, 58 F.3d at 890.

Ramirez maintains that he is not "pick[ing] and choos[ing] the best pieces from different versions of the guidelines" because Amendment 782 was made retroactively applicable. Appellant's Reply Br. at 13. The implication is that Amendment 782 should be considered part of the earlier Guidelines Manuals for the purposes of the "one-book" rule. It is true that, under § 1B1.10(b)(1), a court determines the defendant's amended Guidelines range by applying Amendments listed in § 1B1.10(d) to the Guidelines in effect at the time of initial sentencing. However, Ramirez cites no authority indicating that this determination renders Amendment 782 part of prior Guidelines Manuals, particularly *for the purpose of* ex post facto *analysis*, and we decline to so rule here. Notably, in *Berrios*, we confronted a situation in which the defendant sought application at sentence-modification proceedings of an earlier version of §

27

1B1.10(b) as well as a retroactive Amendment reducing his offense level. *See* 126 F.3d at 432–33. We applied *Keller* and ruled that there was no *ex post facto* violation, without finding it significant that one of the provisions the defendant sought to apply was retroactive. *Id.* at 433.

*Keller*'s application of the "one-book" rule to an *ex post facto* challenge still dictates that we compare the version of the Guidelines in effect at a sentencing reduction proceeding against the version in effect at the time of the defendant's original offense and sentence.[8] *See id.* (citing *Keller*'s articulation and stating that "[a]nalogous principles apply to a situation where . . . an already-sentenced defendant seeks to take advantage of later amendments to the Sentencing Guidelines"). Here, then, we must compare the 2014 Guidelines Manual as a whole to the 2002 and 2005 Guidelines

---

[8] In light of the fact that § 1B1.10 did not change between the time of Ramirez's commission of the offense and sentencing, we need not decide which moment serves as the relevant point of comparison.

Manuals each as a whole. Under the 2014 Guidelines Manual, Ramirez is entitled to have Amendment 782 applied to his prior Guidelines determination, but subject to the limitation in § 1B1.10(b)(2)(A) which ultimately made him ineligible for a reduction. Under the Guidelines Manuals in effect at the time of the offense and initial sentence, Ramirez was not entitled to application of Amendment 782. Thus, Ramirez is not eligible for a sentence reduction under *any* Guidelines Manual considered as a whole. In these circumstances, we conclude that the 2014 Guidelines are not more onerous on Ramirez than the 2002 or 2005 Guidelines and, thus, there is no *ex post facto* violation.

Our holding that there is no *ex post facto* violation in applying Amendment 759 to limit sentence reductions authorized by a later Amendment—such as Amendment 782—is consistent with the

rulings of every other circuit to have addressed this question.[9] *See Kruger*, 838 F.3d at 790–92 [6th Cir.]; *United States v. Thompson*, 825 F.3d 198, 204–06 (3d Cir. 2016); *United States v. Kurtz*, 819 F.3d 1230, 1236–37 (10th Cir. 2016); *United States v. Bayatyan*, 633 F. App'x 912, 915–16 (10th Cir. 2015) (unpublished opinion); *United States v. Waters*, 771 F.3d 679, 680–81 (9th Cir. 2014) (per curiam); *United States v. Diggs*, 768 F.3d 643, 645–46 (7th Cir. 2014); *United States v. Colon*, 707 F.3d 1255, 1258–59 (11th Cir. 2013); *see also United States v. Kay*, 655 F. App'x 165 (4th Cir. July 22, 2016) (mem.), *aff'g* No. 09-cr-252 (TEJ), 2016 WL 661591, at *2–3 (S.D.W. Va. Feb. 18, 2016). While these other circuits have not explicitly invoked the "one-book" rule in this context, *Kruger*, *Bayatyan*, and *Colon* employed reasoning that

---

[9] Ramirez relies on two district court cases, which come to a contrary conclusion. *See Alli-Balogun v. United States*, 114 F. Supp. 3d 4, 49–50 (E.D.N.Y. 2015); *United States v. King*, No. 99-cr-952-1, 2013 WL 4008629, at *21 (N.D. Ill. Aug. 5, 2013). However, *Alli-Balogun* addressed a different provision—U.S.S.G. § 1B1.10(e)—and involved a defendant who had served more than the maximum sentence of the amended Guidelines range, such that § 1B1.10(e) operated to increase his punishment. Meanwhile, *King* has been abrogated by *United States v. Diggs*, 768 F.3d 643 (7th Cir. 2014).

30

implicitly applied it. In both *Kruger* and *Bayatyan*, the courts partially based their conclusions on the fact that Amendment 782 did not exist in the Guidelines at the time of initial sentencing. *See Kruger*, 838 F.3d at 791 ("[T]he . . . version of § 1B1.10 [at the time of initial sentencing] didn't list Amendment 782 (which wouldn't come into existence for several more years) as a covered amendment, and so it could not have afforded [the defendant] any relief on the basis of it."); *Bayatyan*, 633 F. App'x at 915 (finding no *ex post facto* violation because "at no point was Amendment 782 covered under the 2010 version of § 1B1.10," which defendant claimed applied at his initial sentencing). In making this point, *Kruger* and *Bayatyan* both looked to Guidelines Manuals *as a whole*—as prescribed by the "one-book" rule—rather than permitting the application of provisions across different Guidelines Manuals. Similarly, in *Colon*— which concerned application of Amendment 759 to limit sentencing reduction pursuant to Amendment 750—the court concluded that

there was no *ex post facto* violation because "[t]he net effect of Amendments 750 and 759 was not to increase [defendant's] range of punishment above what it was at the time she committed her crimes." 707 F.3d at 1258–59. By comparing the Guidelines range at the time defendant committed her crimes to the Guidelines range at the time of the § 3582(c)(2) proceeding, the court implicitly engaged in the same analysis called for by the "one-book" rule.

## CONCLUSION

We hold that Amendment 759's application prohibiting Ramirez from taking advantage of Amendment 782 does not violate the *Ex Post Facto* Clause. We therefore **AFFIRM** the district court's order denying Ramirez's motion for sentence reduction under 18 U.S.C. § 3582(c)(2).