# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 16, 2018　　　　Decided February 5, 2019

No. 17-3065

UNITED STATES OF AMERICA,
APPELLEE

v.

ALVARO ALVARAN-VELEZ, ALSO KNOWN AS MARCOS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00065-2)

*Carmen D. Hernandez*, appointed by the court, argued the cause and filed the brief for appellant.

*Kirby A. Heller*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for appellee. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and PILLARD, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: The question on appeal is whether the *Ex Post Facto* Clause forbids applying a current U.S. Sentencing Commission policy statement, which offers sentence reductions only to those defendants whose original sentences are not already below newly reduced guideline ranges, to a defendant whose crime occurred before that version of the policy statement took effect. The defendant, Alvaro Alvaran-Velez, claims that he could have gotten a sentence reduction under the version of the policy statement in effect at the time of his crime. Using a newer version, he argues, violated the *Ex Post Facto* Clause by eliminating a real chance for a shorter sentence upon guideline range reduction that he believes existed when he committed the offense. Because, correctly read, the earlier version did not even apply to him, we affirm the district court's denial of Alvaran's motion for a sentence reduction.

## I.

Alvaran violated 21 U.S.C. §§ 959, 960, and 963 by conspiring between 2005 and 2007 to distribute five kilograms or more of cocaine, knowing or intending that the cocaine would be imported into the United States. He was convicted after a jury trial in 2010. At the time of Alvaran's sentencing in 2013, the applicable Sentencing Guideline range was 324 to 405 months imprisonment. The court nevertheless sentenced him to 180 months, significantly below the applicable range. In doing so, the court weighed the seriousness of the offense, Alvaran's lack of a criminal record, his poor health, letters from his family attesting to his good character, the fact that he was raised in a poor family, and that he was far less culpable than another defendant who had been sentenced to 300 months—all factors appropriate to consider under 18 U.S.C. § 3553(a).

The year following Alvaran's sentencing, the Sentencing Commission adopted Guideline Amendment 782, which lowered the base offense levels for certain drug crimes by two levels, and Amendment 788, which applied the new levels retroactively. United States Sentencing Commission, *Guidelines Manual*, App. C, amends. 782, 788 (Supp. 2014). Had Alvaran been sentenced under the amended guidelines, the applicable sentencing range would have been 262 to 327 months—substantially lower than the 324-to-405-month range at Alvaran's initial sentencing, but still well above his actual 180-month sentence.

Alvaran requested a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), which allows a district court to reduce the sentence of a defendant whose guideline range is subsequently lowered "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." But the district court held that a newer version of one of those policy statements, USSG § 1B1.10, foreclosed reducing his sentence. As revised by a 2011 amendment, Amendment 759, that policy statement set the bottom of the new guideline range as a floor for sentence reductions by providing that "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A) (2016). Because Alvaran's sentence was already below the minimum of the amended guideline range, the district court held that USSG § 1B1.10 prevented any further reduction.

Alvaran contended that applying the policy statement's sentence reduction floor to deny him a reduction violated the *Ex Post Facto* Clause, U.S. CONST. art. I, § 9, cl. 3, because a 2006 version of the policy statement—in force when he committed his crime—would have allowed the district court to reduce his sentence in response to the amended guidelines

range.  That 2006 policy statement advised a court reducing a sentence pursuant to guideline amendments to "consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced."  USSG § 1B1.10(b) (2006).  Subsection (c) listed twenty-four amendments that lowered guideline ranges; it did not include the amendment that lowered Alvaran's sentencing range, Amendment 782, which would not be passed for another eight years.  Alvaran pointed to an application note to the 2006 version that states that, "[w]hen the original sentence represented a downward departure, a comparable reduction below the amended guideline range may be appropriate."  *Id.* § 1B1.10, comment. (n.3).  That application note, he claimed, shows that, but for the 2011 amendment of USSG § 1B1.10(b)(2)(A) prohibiting below-guideline sentence reductions, he would have been eligible for a reduction below the lowered guideline range comparable to the original reduction the court granted.

At the hearing on Alvaran's motion for a sentence reduction, the district court said that it would lower his sentence "very substantially" if it could, but that the then-current Guidelines Manual forbade a reduction.  Alvaran argued that applying the new policy statement with the guideline reduction violated the *Ex Post Facto* Clause because it eliminated his opportunity to invoke the court's discretion to lower his sentence.  The district court disagreed.

We review de novo whether applying the 2016 version of USSG § 1B1.10 to Alvaran violates the *Ex Post Facto* Clause. *See United States v. Haipe*, 769 F.3d 1189, 1191 (D.C. Cir. 2014).

5

II.

Any "law that changes the punishment, and inflicts a greater punishment[] than the law annexed to the crime[] when committed," is an *ex post facto* law. *Calder v. Bull*, 3 U.S. 386, 390 (1798). "The touchstone of this . . . inquiry is whether a given change in law presents a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Peugh v. United States*, 569 U.S. 530, 539 (2013) (quoting *Garner v. Jones*, 529 U.S. 244, 250 (2000)). Whether a risk is sufficient is "a matter of degree" that "cannot be reduced to a 'single formula.'" *Id.* (quoting *Calif. Dep't of Corr. v. Morales*, 514 U.S. 499, 509 (1995)). But the Court has said that a law that "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes" does not present a sufficient risk. *Morales*, 514 U.S. at 509.

The government suggests that sentence modification proceedings under 18 U.S.C. § 3582(c)(2) in response to a Commission decision to lower the guideline range simply "do not implicate the *ex post facto* prohibition" because such proceedings "by their very nature can only reduce a defendant's sentence (or, at worst, leave it unchanged)." Appellee Br. 10-11. The Supreme Court, however, has held that certain losses of opportunities for shortened sentences can constitute an "increased" punishment under the *Ex Post Facto* Clause. An opportunity for a shortened sentence whose loss "creates only the most speculative and attenuated possibility of . . . increasing the measure of punishment for covered crimes" does not implicate the *Ex Post Facto* Clause. *Morales*, 514 U.S. at 509. But if the opportunity is sufficiently likely to materialize, its loss may have "the effect of lengthening [a defendant's] period of incarceration." *Lynce v. Mathis*, 519 U.S. 433, 443 (1997). In *Weaver v. Graham*, the Court

invalidated the retroactive application of a Florida statute that made the formula for calculating early-release credits less generous than it had been when the defendant committed his crime. 450 U.S. 24, 25, 35-36 (1981). Rejecting the notion that the *ex post facto* analysis depended on whether defendants had a *right* to early-release credits before the new law came into effect, the Court said that, "even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." *Id.* at 30-31. Even though Weaver had not yet earned the credits, the new law's net effect of making credits harder to obtain than they had been when Weaver was sentenced violated the *Ex Post Facto* Clause. *Id.* at 35. Similarly, in *Lynce v. Mathis*, the Court invalidated a different Florida statute that retroactively canceled early-release credits that Lynce had already used to get out of prison. 519 U.S. at 435. The state argued that, because the type of credits at issue only accrued if the Florida prison system passed a certain threshold of overcrowding, Lynce "could not reasonably have expected to receive any such credits," and that his risk of increased punishment was therefore "speculative and attenuated." *Id.* at 437-38, 446. The Court rejected that argument as applied to Lynce, who had already been awarded credits that stood to be cancelled. *Id.* at 446.

Alvaran likens his situation to that of Weaver and Lynce. "Throughout most of its history," he contends, guidelines policy statement section 1B1.10 "encouraged courts modifying sentences pursuant to retroactive guideline amendments to re-impose a below-guideline sentence" that was, proportionately, as far below the reduced guidelines range as the original sentence was below the original range. Appellant's Br. 3. As Alvaran sees it, the 2011 amendment changed that to his detriment. By generally prohibiting sentence reductions for

anyone whose original sentence fell below the bottom of the amended guidelines range, Alvaran claims, the 2011 amendment effected "the complete removal of any opportunity to invoke the court's discretion to reduce a sentence" for someone in his position. *Id.* at 12-13. The amended version of section 1B1.10, he argues, thus imposes a "reduced opportunity to shorten his time in prison." *Id.* at 13 (emphasis omitted) (quoting *Weaver v. Graham*, 450 U.S. 24, 33-34 (1981)).

The flaw in Alvaran's reasoning is that, unlike Weaver and Lynce, Alvaran never had the opportunity for reduced punishment that he now claims he lost. The text Alvaran wants applied to him—that "the court should consider the term of imprisonment that it would have imposed had *the amendment(s) to the guidelines listed in subsection (c)* been in effect at the time the defendant was sentenced"—is explicitly limited to the listed amendments, each of which had already been adopted and made retroactive in 2006. USSG § 1B1.10(b) (2006) (emphasis added). Alvaran reads into the 2006 guideline policy a broad, forward-looking promise of proportionate sentencing reduction that the textually cabined policy does not support. Unlike the laws at issue in *Weaver* and *Lynce*, the 2006 version of section 1B1.10 did not confer on defendants a general opportunity to benefit; rather, it extended an opportunity that, by its terms, applied only to the amendments it enumerated.

Because the 2006 version of section 1B1.10 did not apply to Alvaran in the first place, we conclude that applying its amended 2016 counterpart does not make his punishment more onerous than it otherwise would have been. Although our sister circuits have relied on different and sometimes broader grounds, none has held to the contrary. *See United States v. Ramirez*, 846 F.3d 615, 625 (2d Cir. 2017); *United States v. Kruger*, 838 F.3d 786, 790-92 (6th Cir. 2016); *United States v.*

*Thompson*, 825 F.3d 198, 200, 206 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 326 (2016); *United States v. Kurtz*, 819 F.3d 1230, 1236-37; (10th Cir. 2016); *United States v. Waters*, 771 F.3d 679, 680-81 (9th Cir. 2014) (*per curiam*); *United States v. Diggs*, 768 F.3d 643, 645-46 (7th Cir. 2014); *United States v. Colon*, 707 F.3d 1255, 1258-59 (11th Cir. 2013).  We join the unanimity of circuits that have held that the 2006 version of the policy statement did not by its own terms give persons in Alvaran's position the opportunity he claims for a reduced sentence.

We also hold that the amendment's prohibition on below-guideline sentence reductions is a permissible exercise of the Sentencing Commission's discretion to determine and limit the retroactivity of its amendments.  *See Dillon v. United States*, 560 U.S. 817, 826 (2010).  The Supreme Court has noted that it is "aware of no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments." *Id.* at 829.  Here, the Commission exercised its discretion in drafting Amendment 782, which lowered Alvaran's guideline range, so as to render it retroactive only as to defendants who had received a sentence exceeding the newly lowered minimum.  The amendment simply did not retroactively lower the range for defendants like Alvaran, who had already received a below-minimum sentence.  The Commission took nothing away from Alvaran when it created a benefit targeted to offenders whose original sentences exceeded the bottom of the newly lowered guideline range.

\*     \*     \*

We accordingly affirm the district court's decision to deny the motion for a sentence reduction.

*So ordered*.